TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-99-00023-CV






John C. Niemeyer/Tana Oil and Gas Corporation, Appellants



v.



Tana Oil and Gas Corporation/John C. Niemeyer, Appellees






FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 95V-273, HONORABLE DAN R. BECK, JUDGE PRESIDING






 We withdraw our original opinion and judgment issued December 21, 2000 and
substitute this one in its place. John C. Niemeyer ("Niemeyer") sued Tana Oil and Gas
Corporation ("Tana") for breach of an oil and gas lease. Niemeyer seeks reversal of the district
court's take-nothing judgment and requests review of three issues: (1) whether he was entitled to
additional royalties under the parties' lease and settlement agreement, (2) whether the court
properly submitted the breach of contract claim to the jury, and (3) whether the jury instruction
that Tana was not obligated to pay for unsold gas was contrary to contractual provisions. Tana
cross-appeals the court's denial of its counterclaims for breach of contract, indemnity, and tortious
interference with contract. Tana also appeals the court's refusal to award its costs of suit. We
will affirm the judgment of the district court on both Niemeyer's claims and Tana's counterclaims.

Facts

 In 1990, Helen Niemeyer entered into an oil, gas, and mineral lease ("original
lease") with Meridian Oil, Inc. ("Meridian") for a 138-acre tract of land in Fayette County and
reserved a 1/8 royalty interest as landowner. Subsequently, Mrs. Niemeyer assigned 5/6 of this
royalty interest to her children, one of whom was John Niemeyer. Meridian later assigned its
interest in the lease to Tana Oil and Gas Corporation. Tana drilled the Niemeyer no. 1 well in
1992, to be used for the production of gas. The Niemeyer children, including John Niemeyer,
brought suit against Tana in 1993 for several causes involving the operation of the well, royalty
payments, and accounting procedures. This litigation was resolved in 1994 by the execution of
a release and settlement agreement ("release"). A final judgment based on the release was
rendered on April 11, 1994.

 The release provided that, with respect to the production of hydrocarbons from the
date of first production through February 28, 1994, Tana and Meridian would pay the Niemeyers
a royalty of 15% of net proceeds actually paid to Tana and Meridian. The royalty would then
increase to 17.94% of net proceeds for the remaining productive life of the well. The settlement
released all past and present claims of the parties as of the date of its execution.

 On October 19, 1995, Niemeyer filed a new suit against Tana and its third-party
buyers, Fayette County Gathering System ("Fayette") and Aquila Southwest Pipeline Corporation
("Aquila").(1) Niemeyer's petition specifically stated that the claims being asserted covered only the
time period from May 1994 forward and did not include claims for the time periods covered by
the release. Niemeyer's claim alleged that Tana had underpaid royalties owed, and improperly
charged Niemeyer for compression and treating of gas, in violation of the original lease
provisions. These charges were based on deductions from Fayette's payments to Tana, which
were then passed back to Niemeyer on a pro-rata basis. Tana, however, deliberately used
payments from a separate incentive agreement to offset these charges.(2) Niemeyer also contended
that he had not been paid for the full volume of gas delivered and sold at the wellhead. This claim
derived from Tana's agreement, as part of its third party contract with Fayette, to allow a certain
amount of gas to be used solely for manufacturing purposes, without charge.

 Tana responded by filing three counterclaims: (1) breach of contract, (2)
indemnity, and (3) tortious interference with contract. Tana's counterclaims were based primarily
on Niemeyer's alleged breach of the release by bringing suit. Tana also asserted that Niemeyer's
suit should have been barred by res judicata or collateral estoppel and that Niemeyer had failed
to adhere to a sixty-day pre-suit notice period, as required by the original lease. In addition, Tana
alleged that Niemeyer's suit deliberately interfered with Tana's planned sale of the majority of its
mineral interests to Rosewood Resources, Inc. ("Rosewood"). Tana claimed that Niemeyer's suit,
filed on October 19, 1995, delayed the October 30 closing of the sale until November 7. Tana
asserted that it incurred damages as a result of this delay, including adverse changes in the sales
contract imposing additional indemnity obligations.

 Prior to trial, on July 7, 1998, the court made three rulings as a matter of law: (1)
the release did not bar Niemeyer's suit, (2) the sale point for the Niemeyer gas occurred at the
wellhead, and (3) Niemeyer was not to be charged for post-production treatment and compression
of gas. At the same time, on the basis of the first ruling, the court denied Tana's claims for breach
of contract and indemnity as a matter of law. In addition, the court granted Niemeyer's motion
for partial summary judgment on Tana's claim for tortious interference with contract.

 Niemeyer's claims went to trial, resulting in a jury verdict declining to find that
Tana had breached the original lease and its amendments (the release). The court rendered a final,
take-nothing judgment in favor of Tana on October 22, 1998. Following denial of his motion for
a new trial, Niemeyer appealed the jury verdict. Tana cross-appealed the trial court's denial of
its claims for breach of contract and indemnity and the granting of Neimeyer's motion for
summary judgment on the claim of tortious interference with contract. Tana also appealed the trial
court's refusal to award its costs of suit.


Discussion

I. Niemeyer's Issues

 Niemeyer raises six issues on appeal. He asserts that the trial court erred by (1)
denying his motion for judgment notwithstanding the verdict ("JNOV"), (2) submitting the breach
of contract claim to the jury, (3) instructing the jury that Tana had no obligation to pay for unsold
gas, (4) refusing to award his damages, (5) refusing to award his attorney's fees, and (6)
overruling his motion for a new trial.

 A. Breach of Contract

 In his first issue, Niemeyer asserts that it was error for the trial judge to overrule
his motion for JNOV because the evidence shows that he was entitled to additional royalties as a
matter of law. Specifically, Niemeyer contends that Tana breached the original lease by refusing
to pay royalties for gas diverted to Fayette and Aquila for manufacturing purposes. Furthermore,
Niemeyer claims that Tana's contract with Fayette impermissibly permitted Fayette to take
deductions for gas treatment.(3) As a result, Tana received fewer net proceeds for gas than if
Fayette had not made such deductions. Neimeyer argues that he is entitled to royalties based on
what Fayette would have paid, and Tana would have received, if the two companies had not
agreed to the treatment charges. Tana replies that the incentive agreement wholly reimbursed
Niemeyer for these deductions.

 A party is entitled to JNOV on a particular issue only if the evidence establishes that
issue as a matter of law. Brush v. Reata Oil & Gas Corp., 984 S.W.2d 720, 724 (Tex.
App.--Waco 1998, pet. denied) (citation omitted). "In determining whether an issue has been
established as a matter of law, we consider only the evidence and inferences supporting the jury's
verdict and disregard all evidence and inferences to the contrary." Id. (citation omitted).

 In this case, the issue is whether Niemeyer could prove Tana breached the contract
as a matter of law. In contention are Niemeyer's and Tana's differing views of which terms of
the contract control the calculation of royalties. The trial court defined the contract as the original
lease and its amendments, that is the release. Niemeyer bases his arguments on paragraphs three
and twenty-six of the original lease. Paragraph three reads in part: 


 As royalty, lessee covenants and agrees: . . . (b) To pay lessor on gas and
casinghead gas produced from said land (1) when sold by lessee, one-eighth of the
amount realized by lessee, computed at the mouth of the well, or (2) when used by
lessee off said land or in the manufacture of gasoline or other products, the market
value, at the mouth of the well, of one-eighth of such gas and casinghead gas . . .
. (Emphasis added.) 


Paragraph twenty-six reads in part: 


 It is expressly understood and provided, that Lessee will bear and pay all
costs and expenses incurred in dehydrating and/or compressing all gas produced
from and under the above described property, including specifically all such costs
and expenses incurred in dehydrating and/or compressing such part or portion of
said gas accruing to Lessor's royalty interest therein under the provisions hereof. 
(Emphasis added.)



 In contrast, Tana argues that its royalty obligations are fully defined in section III,
paragraph A(2) of the release, which reads: "With respect to production of all oil, gas and
associated hydrocarbons from the Niemeyer Oil Unit No. 1 after February 28, 1994 and for the
productive life of the well, Defendants Tana and Meridian shall pay to Plaintiffs a royalty of
17.94% of net proceeds actually paid to Defendants." (Emphasis added.) 

 Neimeyer asserts that, regardless of the inclusion of the reference to net proceeds
in the release, the terms of the original lease apply. In agreeing to the term "net proceeds," he
argues, the parties may have intended to permit other deductions, such as for transportation, but
not charges specifically forbidden by the original lease. Accordingly, he argues, the reference to
"net proceeds" does not relieve Tana of its obligation to pay for gas used off-lease under paragraph
three of the original lease.

 In rejoinder, Tana contends that it fulfilled its contractual obligation to pay 17.94%
of net proceeds actually received, which was greater than the 15% called for in the original lease. 
Further, the common meaning of "net," Tana argues, suggests deductions made from payments
received. Tana asserts that even if this term excluded deductions for treatment and compression
costs, these costs were fully reimbursed by the amounts Tana, and ultimately Niemeyer, received
from the incentive agreement. Likewise, Tana, and ultimately Niemeyer, were fully compensated
for the "free" gas provided to Aquila and Fayette for manufacturing through the receipt of a higher
royalty rate for gas actually sold to these companies.

 We find that because the release was intended to reconcile the inconsistencies in the
parties' interpretations of their royalty agreement, the basis for the first suit, its terms supersede
those of the original lease when the two conflict. The release itself supports this interpretation in
section V, paragraph I, which states that "the Compromise Agreement and Release executed at the
mediation on March 10, 1994, this Agreement and the Agreed Order of Dismissal with Prejudice
supersede any and all prior agreements, arrangements, or understandings . . . between all of the
parties relating to this lawsuit." Therefore, Tana was obligated to pay Niemeyer a fixed
percentage of its "net proceeds" as specified by the release. The dictionary defines "net" as "free
from all charges or deductions . . . remaining after the deduction of all charges, outlay or loss . . .
opposed to gross." Webster's Third New International Dictionary 1519 (Philip B. Gove ed.,
1961). Accordingly, a reasonable definition of "net proceeds" includes deductions made by
Fayette for compression and treating; it does not include payments for gas that was never sold at
all, but was, instead, diverted to Fayette for manufacturing purposes.

 We hold that the jury, when asked to consider the release as an amendment to the
contract could have taken into account the plain meaning of "net proceeds" when it failed to find
that Tana owed Niemeyer additional sums for compression and treating and for unsold gas. We
conclude that Tana's arguments, supported by evidence that it paid the full 17.94% of net proceeds
contemplated in the release, constituted evidence that Tana complied with its contractual
obligations. Thus, Niemeyer failed to prove as a matter of law that Tana breached the contract. 
Therefore, the trial court properly denied the JNOV. See Brush, 984 S.W.2d at 724. We
overrule Niemeyer's first issue.


 B. Submission of Question to the Jury

 Niemeyer's next issue asserts that it was error to submit his breach of contract claim
to a jury. He argues that because neither party claimed that the contract was ambiguous, the judge
should have interpreted the lease and its amendments as a matter of law.

 Absent a showing of some prejudice, submission of a question of law to the jury
is harmless since the trial court can always use the jury's findings as advisory only. Medical
Towers, Ltd. v. St. Luke's Episcopal Hosp., 750 S.W.2d 820, 826 (Tex. App.--Houston [14th
Dist.] 1988, writ denied) (citation omitted).

 The general question submitted in the jury charge, "Did Tana breach the contract?",
was an issue of fact appropriate for jury determination. See Ryan Mortgage Investors v. Fleming-Wood, 650 S.W.2d 928, 932-33 (Tex. App.--Fort Worth 1983, writ ref'd n.r.e.) (approving broad
form question as to whether party failed to perform obligations in accordance with contract). The
jury was free to determine whether Tana had, in fact, fairly and reasonably marketed gas without
making impermissible deductions. Likewise, we find that it was permissible for the jury to
determine whether Tana had complied with the contract according to the terms of the lease and
its amendments.

 However, Niemeyer argues that the issue submitted to the jury involved contract
interpretation, not compliance. Therefore, in the absence of the court's determination of
ambiguity, resolution of the parties' differences was an issue of law for the court. "[I]nterpretation
of an unambiguous document is a question of law for the trial court only." Medical Towers, 750
S.W.2d at 825 (citation omitted). A contract is ambiguous if it "remains reasonably susceptible
to more than one meaning . . . ." Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157
(Tex. 1951).

 In this case, Tana defined "net proceeds" as including all deductions, in accordance
with the dictionary definition cited above. Niemeyer countered that "net proceeds" contemplated
all deductions except those forbidden by the original lease. We hold that to the extent the term
"net proceeds" was susceptible to more than one meaning, and was therefore ambiguous, it was
correctly a fact issue for the jury. See Trinity Universal Ins. Co. v. Ponsford Bros., 423 S.W.2d
571, 575 (Tex. 1968) (noting that jury may resolve question of ambiguous intent) (citations
omitted). The jury was free to choose Tana's definition of "net proceeds" in determining that Tana
complied with its obligation to pay Niemeyer the royalty percentage required by the release. 
Likewise, the jury could have found that Tana's "net proceeds" did not include royalty obligations
for gas diverted to Aquila and Fayette for manufacturing purposes, in accordance with the court's
instruction that "[n]o payments are obligated for gas that could not be sold." 

 Moreover, Niemeyer did not present any evidence of prejudice in the submission
of the breach of contract question to the jury. See Medical Towers, 750 S.W.2d at 826. 
Accordingly, even if the trial court erred by submitting the breach of contract issue to the jury,
we conclude that such error is harmless because the trial court could have deemed an incorrect
verdict immaterial and disregarded it. Id. The trial court chose not to do so. We overrule
Niemeyer's second issue.


 C. Jury Instruction

 In his third issue, Niemeyer asserts that the trial court erred in instructing the jury
that Tana had no obligation to pay for unsold gas. The relevant section of the jury charge states:
"The lease entitles Niemeyer to payment for all gas, metered at the wellhead, that was sold and
reasonably could be sold. No deductions are to be made for post production compression and
treating charges. No payments are obligated for gas that could not be sold." (emphasis added).

 We review allegations of error in the jury charge under an abuse of discretion
standard. Howell Crude Oil Co. v. Donna Refinery Partners, Ltd., 928 S.W.2d 100, 110 (Tex.
App.--Houston [14th Dist.] 1996, writ denied) (citations omitted). "The trial court has wide
discretion in submitting jury questions as well as instructions and definitions." Id. at 110 (citations
omitted). Error in the jury charge is reversible if, when viewed in light of all the circumstances,
it amounts "to such a denial of rights of the complaining party as was reasonably calculated and
probably did cause the rendition of an improper judgment." Id. (citations omitted).

 Niemeyer contends that the instruction on unsold gas was contrary to paragraph
three of the original lease. As determined above, there was sufficient evidence for the trial court
to conclude that where the original lease and the release were inconsistent, the terms of the release
controlled. Consequently, the court could determine that, regardless of paragraph three of the
original lease, the release obligated Tana to pay Niemeyer only a fixed percent of the net proceeds
that Tana actually received. Because Tana was not paid for gas used by Fayette and Aquila for
manufacturing purposes, it was reasonable for the court to find that royalties for this gas should
not be factored into the calculation of net proceeds.

 We also note that Niemeyer received a favorable jury charge on the issue of post-
production treatment charges. The trial court apparently accepted Niemeyer's contention that
paragraph twenty-six of the original lease was in force when it instructed the jury that "[n]o
deductions are to be made for post production compression and treating charges." In spite of this
instruction in the charge, the jury was not persuaded that Tana had breached the contract and its
amendments. We may, therefore, infer that omitting the instruction on the issue of unsold gas
would have had little impact on the jury's failure to find that Tana breached its contractual
obligation to pay for all gas that was sold and reasonably could be sold. We do not find any error
that was calculated to, and probably did cause, an improper judgment amounting to a denial of
Niemeyer's rights. See id. Accordingly, the trial court did not abuse its discretion in instructing
the jury. See id. Niemeyer's third issue is overruled.


II. Tana's cross-appeal

 Tana asks that we review three issues: (1) the propriety of pre-trial rulings barring
its claims of breach of contract and indemnity, (2) the grant of Niemeyer's motion for summary
judgment on its claim of tortious interference with contract, and (3) the trial court's refusal to
award costs of suit following the jury's verdict in its favor.


 A. Breach of Contract and Indemnity

 Tana's first issue contends that the trial court's July 7 order barring its claims of
breach of contract and indemnity constituted an abuse of discretion. These claims were based
primarily on the theory that Niemeyer breached the release by bringing a suit that should have
been barred by res judicata or collateral estoppel. Because a settlement agreement, such as a
release, does not constitute a final judgment, it cannot form the basis of a finding of res judicata
or collateral estoppel.(4) We note that while the release applied to all past and present claims at the
time of its execution, the trial court could have found that it did not bar prospective claims that
might arise in regard to future gas production from the Niemeyer well. Absent a finding of res
judicata or collateral estoppel, the trial court could properly find that Niemeyer was not barred
from bringing the instant suit.

 Tana also argues that Niemeyer breached paragraph nine of the original lease by
failing to give sixty days notice prior to filing suit. Paragraph nine reads in part:


 In the event lessor considers that lessee has not complied with all its
obligations hereunder, both express and implied, lessor shall notify lessee in
writing, setting out specifically in what respects lessee has breached this contract. 
Lessee shall then have sixty (60) days after receipt of said notice within which to
meet or commence to meet all or any part of the breaches alleged by lessor. The
service of said notice shall be precedent to the bringing of any action by lessor on
said lease for any cause, and no such action shall be brought until the lapse of sixty
(60) days after service of such notice on Lessee. 



 In a suit on a mineral lease provision with almost identical wording, the Texas
Supreme Court held that the notice requirement applied only to actions to cancel the lease and not
to suits for damages. See Texas Oil & Gas Corp. v. Vela, 429 S.W.2d 866, 875 (Tex. 1968). 
Given that the purpose of such a provision was to allow the lessee to prepare his suit, the court
stated, failure to comply was grounds for abatement, but could not bar the right to file suit,
constitute a basis for a take-nothing judgment, or be a defense to a suit for damages. Id. The
record does not reflect that Tana sought an abatement. As Niemeyer's suit was for damages, and
not to cancel the lease, we conclude that failure to give notice could not have been the basis of
Tana's breach of contract claim. See id.

 Tana also contends that fact issues existed as to the intent and understanding of the
parties regarding the lease, as well as issues relating to method and consistency in royalty
accounting. We conclude that the trial court could reasonably determine that such issues would
be resolved by the trial of Niemeyer's claims on the merits. We overrule Tana's first issue.


 B. Tortious Interference with Contract

 Secondly, Tana appeals the trial court's granting Niemeyer's motion for partial
summary judgment on Tana's claim of tortious interference with contract. Summary judgment for
the defendant is proper where the evidence shows that no genuine issue of material fact exists on
one or more of the essential elements of the plaintiff's cause of action. Black v. Victoria Lloyds
Ins. Co., 797 S.W.2d 20, 27 (Tex. 1990) (citation omitted). In order to prevail on a summary
judgment motion, a defendant must either negate at least one essential element of the non-movant's
cause of action, or prove all essential elements of an affirmative defense. Randall's Food Mkts.,
Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995) (citations omitted). "In reviewing a summary
judgment, we must accept as true evidence in favor of the non-movant, indulging every reasonable
inference and resolving all doubts in his or her favor." Id. at 644 (citation omitted).

 Tana's claim alleged that Niemeyer deliberately worked to delay the sale of the
company's assets to Rosewood by timing his suit to interfere with the planned sale. Tana further
claims that it sustained damages as a result of the delay and the need to change its sale terms. 
Tana asserts that whether Niemeyer's conduct in filing suit was covered by a qualified privilege,
which was dependent on a good faith assertion of a legal right, was properly a question of fact for
the jury.

 Niemeyer's motion for partial summary judgment countered Tana's claim with the
affirmative defense of legal justification. "[L]egal justification . . . is treated as a type of
privilege." Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689 (Tex. 1989). "The party asserting
this privilege does not deny the interference but rather seeks to avoid liability based upon a
claimed interest that is being impaired or destroyed by the plaintiff's contract." Id. at 689-90. 
"[L]egal justification . . . in the interference of contractual relations is an affirmative defense upon
which the defendant has the burden of proof." Id. at 690. "[O]ne is privileged to interfere with
another's contract (1) if it is done in a bona fide exercise of his own rights, or (2) if he has an
equal or superior right in the subject matter to that of the other party." Id. at 691 (citations
omitted). "[I]f the trial court finds as a matter of law that a defendant had a legal right to interfere
with a contract, then the defendant has conclusively established the justification defense and the
motivation behind assertion of that right is irrelevant." Texas Beef Cattle Co. v. Green, 921
S.W.2d 203, 211 (Tex. 1996) (citations omitted).

 Because the trial court found that Niemeyer's suit was not barred by res judicata, 
thereby giving Niemeyer the legal right to file suit, it was within the trial court's discretion to rule
that Niemeyer's filing suit was a bona fide exercise of his rights. See Sterner, 767 S.W.2d at 691. 
Consequently, Niemeyer established the requisite elements of an affirmative defense. See
Randall's, 891 S.W.2d at 644. Niemeyer's motivation for his suit was, therefore, irrelevant. See
Texas Beef Cattle Co., 921 S.W.2d at 211. Accordingly, we find no error in the trial court's
granting partial summary judgment on this issue. 


 C. Costs of Suit

 Tana also appeals the trial court's refusal to award it court costs. Tana contends
that because it prevailed at trial on the merits, it should have been awarded costs, absent a finding
of good cause pursuant to the Texas procedural rules. See Tex. R. Civ. P. 131. "[A]llocation of
costs is a matter for the trial court's discretion and cannot be overturned on appeal unless the trial
court abused its discretion." University of Houston--Clear Lake v. Marsh, 981 S.W.2d 912, 914
(Tex. App.--Houston [1st Dist.] 1998, no pet.) (citation omitted). "A trial judge must allocate
costs according to the provisions of rule 131 unless it makes a finding of good cause." Id. at 914
(citing Tex. R. Civ. P. 141) (citation omitted). "In the absence of an explanation for assessing
costs contrary to the rule, the trial court abuses its discretion." Operation Rescue-Nat'l v. Planned
Parenthood of Houston and Southeast Tex., Inc., 937 S.W.2d 60, 87 (Tex. App.--Houston [14th
Dist.] 1996), aff'd as modified on other grounds, 975 S.W.2d 546 (Tex. 1998) (citations omitted).

 Tana argues that it was the successful party based on the jury verdict; therefore, 
it was entitled to recover all costs from Niemeyer. See McNamara v. Fulks, 855 S.W.2d 782, 785
(Tex. App.--El Paso 1993, no writ). Tana contends that the trial court's failure to either award
costs or justify its refusal to do so amounted to an abuse of discretion. See id. We disagree. Rule
303 of the Texas Rules of Civil Procedure states as follows:


When a counterclaim is pleaded, the party in whose favor final judgment is
rendered shall also recover the costs, unless it be made to appear on the trial that
the counterclaim of the defendant was acquired after the commencement of the suit,
in which case, if the plaintiff establishes a claim existing at the commencement of
the suit, he shall recover his costs.



Tex. R. Civ. P. 303; see Building Concepts, Inc. v. Duncan, 667 S.W.2d 897, 906 (Tex.
App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.) (finding that where both parties have
successfully prosecuted their respective claims, it was not error for judge to divide court costs). 

 Prior to trial, the court found for Niemeyer on Tana's counterclaims, ruling that
his suit was not barred by res judicata or collateral estoppel, thereby denying Tana's claims of
breach of contract and indemnity. The court also granted Niemeyer's motion for partial summary
judgment on Tana's claim of tortious interference with contract. Accordingly, we find that
because Tana did not prevail on its counterclaims, it was within the trial judge's discretion to
refuse to assess court costs against either party. See Building Concepts, 667 S.W.2d at 906. In
effect, neither party was wholly successful; therefore, it was within the trial court's discretion to
order each party to bear its own costs. See id. We overrule Tana's third issue.


Conclusion

 Having found no reversible error by the trial court, we affirm the judgment in
all respects.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Powers*

Affirmed

Filed: February 8, 2001

Publish 


* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. Niemeyer non-suited Fayette and Aquila prior to trial.
2. The Western Fayette Incentive Agreement ("incentive agreement") provided that Fayette,
Tana's buyer, would pay 13.5 cents for every Mcf (thousand cubic feet) of gas it received, over
and above the contract price paid for the gas. Tana used the incentive payment as an offset to
compression charges in calculating its net proceeds, i.e., the amount on which it based Neimeyer's
royalty percentage.
3. Treating the gas was necessary to turn it into a marketable product. Toward this end, Tana sold
the gas to Fayette, which charged a fee for compressing it. Fayette then removed a portion of the
gas to use as fuel for its compressor station and sold the remainder to Aquila, which used its own
processing plant to extract the natural gas liquids. Aquila also removed gas to run its own plant. 
Tana's proceeds were based on an 84% royalty share of the resale value of natural gas liquids and
residue gas (the gas left after removal of liquids), an amount that could only be calculated on
discharge from Aquila's plant. Niemeyer then received his pro-rata share from the amount paid to
Tana. Tana contends that it should not be held liable for royalties on gas diverted for manufacturing
purposes because this occurred post-sale and post-production, and was part of the consideration paid
in exchange for a better royalty percentage. Tana further argues that the incentive agreement fully
offset the treatment fees it paid.
4. Tana contends that since the litigation was terminated by an agreed dismissal with prejudice
that the doctrines of res judicata or collateral estoppel bar Niemeyer's suit. However, the
authorities relied upon by Tana are not in point because here, the release and settlement agreement
by its terms does not release future claims. Instead, the release only deals with retroactive claims. 
Therefore, since the agreed order of dismissal not only references but incorporates the release and
settlement agreement by its terms, the doctrines of res judicata and collateral estoppel are
inapplicable.

 Tana argues that it was the successful party based on the jury verdict; therefore, 
it was entitled to recover all costs from Niemeyer. See McNamara v. Fulks, 855 S.W.2d 782, 785
(Tex. App.--El Paso 1993, no writ). Tana contends that the trial court's failure to either award
costs or justify its refusal to do so amounted to an abuse of discretion. See id. We disagree. Rule
303 of the Texas Rules of Civil Procedure states as follows:


When a counterclaim is pleaded, the party in whose favor final judgment is
rendered shall also recover the costs, unless it be made to appear on the trial that
the counterclaim of the defendant was acquired after the commencement