# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00251-CV

**Jennifer Castilleja, Appellant**

**v.**

**Terryl Monterastelli and Kahlig Enterprises, Inc. d/b/a Bluebonnet Motors, Appellees**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
### NO. C2015-0296C, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jennifer Castilleja sued Terryl Monterastelli and his employer Kahlig Enterprises, Inc. d/b/a Bluebonnet Motors (Bluebonnet) for injuries that she allegedly sustained from an automobile accident. The jury found that none of the parties was negligent, and the trial court signed a take-nothing judgment in accordance with the jury's verdict. On appeal, Castilleja challenges the legal and factual sufficiency of the evidence to support the jury's findings that Monterastelli and Bluebonnet were not negligent and argues that the trial court erred by including an instruction to the jury on sudden emergency. For the following reasons, we affirm the trial court's judgment.[1]

---

[1] The notice of appeal in this case was originally filed in the district court on July 26, 2016. The Supreme Court of Texas ordered the case transferred to the Eighth Court of Appeals pursuant to its docket equalization authority. *See* Tex. Gov't Code § 73.001; Misc. Docket No. 16-9040 (Tex. Mar. 22, 2016) (per curiam). This Court transferred the case to our sister court on August 9, 2016. On April 12, 2018, the Supreme Court of Texas ordered that this case, along with certain other cases, be transferred back to this Court from the Eighth Court, and we consider this appeal pursuant to that order. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018) (per curiam).

**Background**[2]

In March 2014, Castilleja and Monterastelli were involved in an automobile accident that occurred around lunchtime on a clear, dry day in New Braunfels on a congested stretch of Highway 46 between two intersections with the access roads on either side of Interstate 35. Highway 46 has five lanes, two in each direction and one turning lane, and the collision occurred in the inside lane going west. Monterastelli was working as a "porter" for Bluebonnet, an automobile collision center; his duties included driving a pickup truck owned by Bluebonnet to pick up parts for the collision center; and that was what he was doing at the time of the accident. The parties presented different versions of how the accident occurred. According to Castilleja, her vehicle was completely stopped at a red light when it was rear-ended by the pickup truck driven by Monterastelli. According to Monterastelli, he was driving the pickup truck owned by Bluebonnet when he rear-ended the sport utility vehicle that Castilleja was driving after she "stopped suddenly."

After the rear-end collision, the parties got out of their vehicles and communicated with each other. Castilleja loaned her cell phone to Monterastelli so that he could call Bluebonnet about the accident because he did not have a phone that worked. According to Monterastelli, neither vehicle was damaged in the collision, and "[b]oth parties stated they were fine." In contrast with

---

[2] Because the parties are familiar with the facts of the case and its procedural history, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts are taken from the evidence admitted at trial.

Monterastelli's account of what happened, according to Castilleja, she told Monterastelli at the scene of the accident that "something [was] wrong with [her] back" and that she would "need to go to the hospital."

The parties drove their respective vehicles away from the scene of the accident without the arrival of the police, and no police investigation was conducted on the accident.[3] Monterastelli drove to Bluebonnet, and Castilleja drove to a nearby restaurant where she was meeting family for lunch. After going to the restaurant, Castilleja drove to Bluebonnet and received confirmation that Monterastelli worked there. According to Castilleja, she told the person she spoke with at Bluebonnet that she needed to go to the hospital but that she needed "some kind of insurance information." She also testified that she was "crying" and "shaking" when she was at Bluebonnet. After she went to Bluebonnet, she drove to the hospital. At the hospital, Bluebonnet was listed as her "insurance company," and she sought treatment for back and neck pain that she claimed was caused by the automobile accident.

Within a few months of the accident, Castilleja sued Monterastelli and Bluebonnet. Among her asserted claims, she alleged that appellees were negligent, and she sought damages from her alleged injuries sustained in the automobile accident.

The jury trial occurred in May and June of 2016. Castilleja's witnesses included Monterastelli, his supervisor and the general manager at Bluebonnet, an expert on accident

---

[3] According to Castilleja, she dialed 911 at the scene of the accident, and she and Monterastelli waited 10 to 15 minutes for the police to arrive before leaving the scene. She also testified that a police officer brought her a form to fill out while she was at the hospital. Although she filled out the form and the form was admitted as an exhibit at trial, she did not file it with the police department, and the police did not conduct a formal investigation.

reconstruction, experts on her alleged injuries and damages, and Castilleja. Among her theories presented to the jury, Castilleja contended that Monterastelli was negligent because he failed to maintain a safe distance between the two vehicles and that his negligence caused the collision. The defense witnesses were experts and, among their theories presented to the jury, they contended that Monterastelli was not negligent and that he acted as a person of ordinary prudence would have acted when Castilleja suddenly and unexpectedly "slammed" on her brakes.

The jury charge read, "Did the negligence, if any, of those named below proximately cause the occurrence in question?" Monterastelli, Bluebonnet, and Castilleja were each listed as parties, and the jury answered "no" as to each of them. Following the jury's verdict of no negligence by any party, Castilleja filed a motion for new trial or, in the alternative, judgment notwithstanding the verdict. After a hearing, the trial court denied those motions and entered judgment in accordance with the jury's verdict. This appeal followed.

**Analysis**

**Sufficiency of Evidence**

In her first and second issues, Castilleja challenges the legal and factual sufficiency of the evidence supporting the jury's findings that the parties were not negligent. She argues that the evidence presented at trial conclusively established "as a matter of law that the jury erred in its finding that there was zero negligence as to all parties" and that "the evidence presented at trial in support of the jury's finding was so lacking as to make the result fundamentally unfair or manifestly unjust." She does not challenge the jury's finding that she was not negligent but challenges its failure to find negligence as to Monterastelli and Bluebonnet.

4

**Standard of Review**

When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241–42 (Tex. 2001) (per curiam); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 807, 810, 822 (Tex. 2005) (describing standard for reviewing legal sufficiency challenge). In determining whether a finding is supported by legally sufficient evidence, we view the evidence in the light most favorable to the finding, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 807. We indulge every reasonable inference that would support the finding. *Id.* at 822.

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. We "must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *See id.* (citing, among other authority, *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (explaining that, when considering factual sufficiency challenge, reviewing court considers all of evidence and "should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust").

**Jury's Findings of No Negligence**

As previously stated, the jury found that the negligence, if any, of Monterastelli and Bluebonnet did not proximately cause the automobile accident. The definitions submitted to the jury defined "[n]egligence," "ordinary care," and "proximate cause" as follows:

> "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.
>
> "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.
>
> "Proximate cause" means a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an injury.

We evaluate the evidence presented at trial in light of these definitions. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) (explaining that appellate court was bound to review evidence in light of unobjected-to definitions submitted to jury).

To support her position that Monterastelli was negligent, Castilleja focuses on the fact that the automobile accident was a rear-end collision and on testimony from experts, the general manager, and Monterastelli's supervisor at Bluebonnet. Castilleja's expert on accident reconstruction opined that, assuming that the pickup truck "was in appropriate working condition" and that Monterastelli "saw" that Castilleja's vehicle had stopped, "[h]e was driving faster than he said he was or there was not as much distance between the two vehicles as he said." Monterastelli's

6

supervisor testified that "when [Monterastelli] came in and said, look, I run into the back of somebody, I mean, it's pretty much evident that he was at fault." The general manager also testified that "clearly [Monterastelli] was following too close" and agreed that the collision "probably would have been" preventable had Monterastelli had a greater following distance. Castilleja also focuses on evidence that Bluebonnet failed to properly train Monterastelli about driver safety and the roadway conditions at the time of the accident. According to Castilleja, "[g]iven the traffic conditions, heavy and moving slowly because it was a typical lunchtime traffic, the fact that Mr. Monterastelli could not avoid the collision indicates his negligence."

But "[t]he mere occurrence of a rear-end accident is not of itself evidence of negligence." *Risinger v. Shuemaker*, 160 S.W.3d 84, 90 (Tex. App.—Tyler 2004, pet. denied). "The plaintiff in a rear-end accident case must prove specific acts of negligence on the part of the following driver." *In re Ybarra*, No. 04-17-00245-CV, 2017 Tex. App. LEXIS 9700, at *13 (Tex. App.—San Antonio Oct. 18, 2017, orig. proceeding) (mem. op.).[4] "In a rear-end collision, 'standards of ordinary care cannot be fixed with any degree of certainty but must be left in large measure to the trier of the facts.'" *Id.* (quoting *Neese v. Dietz*, 845 S.W.2d 311, 314 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). "The jury is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions from the evidence

---

[4] Appellees filed a post-submission letter brief concerning *In re Ybarra*, No. 04-17-00245-CV, 2017 Tex. App. LEXIS 9700, at *13 (Tex. App.—San Antonio Oct. 18, 2017, orig. proceeding) (mem. op.). Castilleja filed a response to the letter brief, objecting to it and moving to strike it. In the procedural context of this appeal, we overrule her objection and deny her request to strike the letter brief.

adduced before it." *Id*. (quoting *Gaitan v. Reyes Salvatierra*, 485 S.W.2d 602, 604 (Tex. Civ. App.—San Antonio 1972, no writ)).

Here the jury could have credited the testimony of Monterastelli, as well as other evidence, to find that he was not negligent. Monterastelli testified that he was in route to Bluebonnet "headed down 46" in the "left-hand lane coming into New Braunfels," that "the light was green," and that "traffic [was] all flowing like 20 miles an hour because it's coming after lunchtime." He "was just driving along, went underneath 35 and then shortly—right after that is when the—the collision occurred"—when Castilleja "slammed on the brakes." He was "[a] couple of car lengths" away from her vehicle when he saw her brake lights come on and then "slammed" on the pickup truck's brakes and "bumped her from behind."[5] He testified that his pickup truck did not skid and that he "was trying to avoid the collision." He also testified that he was driving approximately 20 miles per hour, which was below the speed limit "because of the traffic," that he was "looking forward" prior to seeing Castilleja's brake lights come on, and that he "wasn't expecting her to just randomly slam on the brakes like she did." He later elaborated that he "still didn't anticipate on her just slamming on the brakes like she did because everybody else was driving normally." He further testified that he did not attempt to move the pickup truck left or right and that there was a vehicle in the right-hand lane next to him, and he answered "No" when asked if there was anything that he could have done to have prevented the collision.

---

[5] Evidence was presented that it was a low-speed, bumper-to-bumper collision. One expert testified that the pre-impact speed of the pickup truck that Monterastelli was driving was 5.15 miles per hour.

In contrast, Castilleja testified that "[t]he light turned red" and that she was "trying to get into the turning lane" and "stopped" with her "signal light on" at the time of the collision.[6] She, however, also answered the following questions from defense counsel about what she noticed about the pickup truck traveling behind her prior to the collision:

> Q.    And you didn't see anything concerning or unusual about the way he was driving; isn't that correct?
>
> A.    Yes.
>
> Q.    He wasn't swerving?
>
> A.    No, not that I could tell.
>
> Q.    He wasn't speeding?
>
> A.    I don't know.
>
> Q.    And wasn't following too closely, right?
>
> A.    It didn't appear to be . . . .

And she answered "Yes" when defense counsel asked her if the vehicle in front of her had "abruptly" stopped.

Consistent with Monterastelli's testimony about the accident and the parties' actions after the accident, the exhibits included an internal Bluebonnet accident report that Monterastelli signed and a driver's crash report that Castilleja signed on the day of the accident. The handwritten details section of the internal Bluebonnet accident report stated:

---

[6] As previously stated, the evidence was that Highway 46 is five lanes, two lanes traveling each way and a turn lane in the middle.

Ms. Castilleja stopped suddenly.  Did not have time to stop.  I bumped her car.  We got out and she stated she was fine, that she was late for lunch with her family, and would not wait for Police to come.  I used her phone to call the Body Shop [Bluebonnet] and let them know.  She left the seen [sic].  Then came back to our Body Shop.

In the driver's crash report prepared by Castilleja on the day of the accident, she stated that the "car in front of [her] stopped abruptly on a very busy street" and that she "in turn stopped[,] looked back[,] the vehicle behind me was approximately 2 car [lengths] behind me when I turned my attention to the front, in a matter of seconds the truck slammed into my vehicle."  Both of these exhibits are consistent with Monterastelli's account of what happened, including that Castilleja "slammed on her brakes" "suddenly," requiring him to do the same but that he was unable to avoid the collision.

It was within the province of the jury to resolve the conflicts in the evidence.  *See City of Keller*, 168 S.W.3d at 819–20; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (observing that "familiar principle that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony"); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (explaining that jury can choose to believe one witness over other witnesses or resolve inconsistencies in their testimony when presented with conflicting evidence).  Given the testimony from the actual eyewitnesses to the accident, the jury reasonably could have discounted the conclusions of the general manager and supervisor about the cause of the collision.  Further, given the inconsistencies in Castilleja's version of what happened, the jury reasonably could have found portions of her testimony not credible, such as her testimony that the traffic light was red, and

10

resolved the conflicts in the evidence to find that Castilleja stopped unexpectedly and abruptly to avoid a collision with the vehicle in front of her that had stopped abruptly or to try to move her vehicle into the turning lane.[7]

Resolving the conflicts in the evidence in favor of Monterastelli's account of the accident, the jury reasonably could have found that Monterastelli used ordinary care, "that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances." *See Risinger*, 160 S.W.3d at 90–91 (observing that there was sufficient evidence to support jury finding that defendant was negligent in causing rear-end collision "by failing to keep a proper lookout or driving inattentively" or alternative finding that defendant was not negligent and explaining that court was "not free to disregard [jury's] conclusion" of no negligence). And, based on its finding that Monterastelli was not negligent, the jury reasonably could have found that any negligence by Bluebonnet in training Monterastelli about driver safety was not the proximate cause of the collision.[8]

---

[7] The jury also could have found Castilleja not credible based on her testimony about her alleged injuries from the accident. Evidence was presented that she drove away from the scene of the accident to have lunch with her family, that she then drove to Bluebonnet to verify it had insurance and to obtain an estimate to repair her vehicle for free before driving to the hospital, that damage to her vehicle was minimal, that she listed Bluebonnet as her "insurance company" on the hospital form, that she had a history of using narcotic painkillers after a back injury in 2010, and that she had "chronic low back pain" prior to the collision, but she was seeking approximately $ 3.45 million in compensation for alleged injuries from the low-impact collision.

[8] In their briefing, appellees argue that Castilleja did not preserve her legal and factual sufficiency challenges to the adverse findings on Bluebonnet's direct negligence. For purposes of this appeal, we assume without deciding that she preserved the sufficiency challenges as to her direct negligence claims against Bluebonnet concerning driver safety training that she specifically raises in her briefing on appeal.

Based on our review of the evidence under the applicable standards of review, we conclude that the evidence was legally and factually sufficient to support the jury's findings of no negligence as to Monterastelli and Bluebonnet. *See Dow Chem. Co.*, 46 S.W.3d at 241–42. We overrule Castilleja's first and second issues.

**Sudden Emergency Instruction**

In her third issue, Castilleja contends that the trial court erred in including an instruction on sudden emergency in the jury charge. The jury was instructed:

> If a person is confronted by an "emergency" arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate attention without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar conditions.

*See Jordan v. Sava, Inc.*, 222 S.W.3d 840, 847–48 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (describing instruction on sudden emergency and when it should be submitted to jury); *see also Dillard v. Texas Elec. Coop.*, 157 S.W.3d 429, 432 (Tex. 2005) (explaining that "[t]here is a sudden-emergency instruction if the occurrence is caused by something other than the defendant's negligence and arises suddenly").

Among their arguments on appeal, appellees argue that Castilleja failed to preserve this issue for our review because she failed to provide "the grounds of the objection." *See* Tex. R. Civ. P. 274 (requiring party objecting to charge to "point out distinctly the objectionable matter and the grounds of the objection"); *see also* Tex. R. App. P. 33.1(a) (addressing preservation of

12

complaints for appellate review). Before the trial court, Castilleja orally objected to the inclusion of the sudden emergency instruction "based upon the—the final trial brief and attached case law as foundation for the same," but she did not identify or explain the substance of her objection on the record other than by reference to her final trial brief, and the final trial brief is not in the record.

Because the record does not provide the substance of the ground for objecting to the sudden emergency instruction, we cannot conclude that Castilleja has preserved her complaint to the instruction for appellate review. *See* Tex. R. Civ. P. 274; *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 339 (Tex. App.—Beaumont 2010, pet. denied) ("To preserve error, the complaining party must specifically object, clearly identify the error, and explain the grounds for the objection." (citing *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003))); *see also Enterprise Leasing Co. v. Barrios*, 156 S.W.3d 547, 549–50 (Tex. 2004) (stating that burden on appellant to bring forward record to provide basis for appellate court to review claim of harmful error and presuming that omitted evidence supports trial court's judgment); *Francis v. Select Specialty Hosp.*, No. 01-04-01186-CV, 2005 Tex. App. LEXIS 9097, *7 (Tex. App.—Houston [1st Dist.] Nov. 3, 2005, no pet.) (mem. op.) ("If an appellant fails to present a complete record on appeal, we must presume that the evidence before the trial court supported the trial court's ruling.").

Further, even if Castilleja had preserved her complaint for our review, we would conclude that the trial court did not abuse its discretion in submitting the instruction. *See In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000) (reviewing complaints of error in the jury charge under abuse of discretion standard); *Niemeyer v. Tana Oil & Gas Corp.*, 39 S.W.3d 380, 387 (Tex. App.—Austin 2001, pet. denied) (same); *see also Downer v. Aquamarine Operators, Inc.*,

13

701 S.W.2d 238, 241–42 (Tex. 1985) (explaining that trial court abuses its discretion when it acts in arbitrary or unreasonable manner, or when it acts without reference to any guiding rules and principles). Appellees pleaded sudden emergency as an affirmative defense, and there was some evidence to support its application. *See Jordan*, 222 S.W.3d at 847 (explaining that "if [sudden emergency] doctrine has been pleaded, and there is some evidence of probative value to support its application, the trial court has a duty to instruct the jury to assist it in reaching its verdict").

Castilleja argues that there was no evidence to support the elements of sudden emergency that: (i) the emergency arise "unexpectedly" and (ii) the emergency not be proximately caused by the person whose conduct is under inquiry. *See id.* at 848 (listing elements of sudden emergency doctrine). Focusing on the evidence that the accident occurred at a "busy intersection, during heavy mid-day traffic," Castilleja argues that "it is obvious that traffic will be stop-and-go and the need to stop quickly should be expected by any prudent driver."

Monterastelli's testimony, however, along with other evidence supported findings that (1) "the emergency condition arose suddenly and unexpectedly"—he testified that he "wasn't expecting [Castilleja] to just randomly slam on the brakes like she did"; (2) the condition was not proximately caused by the negligent act or omission of Monterastelli—he testified that he was "looking forward," not speeding, and a "couple of car lengths" away prior to seeing Castilleja's vehicle's brake lights come on; and (3) "after a condition arose that to a reasonable person would have required immediate action without time for deliberation, [Monterastelli] acted as a person of ordinary prudence would have acted under the same or similar circumstances"—he testified that he slammed on the pickup truck's brakes and tried to avoid the accident. *See id.* Thus, there was

14

evidence to support including the instruction in the jury charge, and the trial court did not abuse its discretion in doing so.  *Id.* at 847–48.[9]

Further, even if we were to conclude that the trial court erred in submitting the challenged instruction, we would not conclude that Castilleja showed that the error probably resulted in the rendition of an improper judgment.  *See* Tex. R. App. P. 44.1(a)(1); *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002) (error in refusing instruction reversible if it probably caused rendition of improper judgment); *Niemeyer*, 39 S.W.3d at 387 (error in jury charge reversible only if "it amounts 'to such a denial of rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment'" (citation omitted)).  Considering the pleadings of the parties, the evidence presented at trial, and the charge in its entirety, we cannot conclude that the inclusion of the instruction amounted to such a denial of Castilleja's rights as was reasonably calculated and did cause the rendition of an improper judgment.  *See Niemeyer*, 39 S.W.3d at 387; *see also Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*,

---

[9] We find unpersuasive or factually distinguishable the cases that Castilleja cites to support her position that the trial court erred in submitting a sudden emergency instruction.  *See Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex. 1995) (stating, under "facts of this case," that it agreed with court of appeals that it was not abuse of discretion to refuse sudden emergency instruction); *Priest v. Myers*, 598 S.W.2d 359, 363–64 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ) (discussing sudden emergency instruction in dicta and reversing and rendering on other ground); *Deviney v. McLendon*, 496 S.W.2d 161, 166–67 (Tex. Civ. App.—Beaumont 1973, writ ref'd n.r.e.) (concluding that there was "no evidence which raised the issue of sudden emergency" and that "there was no 'legally acceptable excuse or justification' raising the issue of sudden emergency in this case").  As to the opinion in *Thomas v. Oldham*, we also observe that the court of appeals in its opinion actually concluded that the trial court should have submitted a sudden emergency instruction "because the evidence [was] conflicting on the issue whether [defendant]'s actions before the alleged 'emergency' arose constituted negligence," but then found that the error in failing to submit the instruction was harmless.  *Oldham v. Thomas*, 864 S.W.2d 121, 127 (Tex. App.—Houston [14th Dist] 1993), *aff'd in part and rev'd in part*, 895 S.W.2d at 360.

15

710 S.W.2d 551, 555 (Tex. 1986) (explaining that, to determine whether alleged error in jury charge is reversible, reviewing court considers pleadings of parties, evidence presented at trial, and charge in entirety).

For these reasons, we overrule Castilleja's third issue.

## Conclusion

Having overruled Castilleja's issues, we affirm the trial court's judgment.[10]

_____
Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   July 13, 2018

---

[10] In their briefing, appellees address additional claims that Castilleja pursued in the trial court but that she does not address on appeal.  We limit our review to the issues raised by Castilleja in her briefing.  *See* Tex. R. App. P. 47.1, 47.4.

16