Maethenia **JORDAN**, Appellant,

v.

**SAVA, INC.** and **John D. Moore**, Appellees.

No. 01–03–00554–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 12, 2007.

Rehearing Overruled April 12, 2007.

---

Charles Thomas Schmidt, Jenifer C. Melby, Schmidt & Hoffer, L.L.P., Houston, TX, for Appellant.

Jack McKinley, Robert L. Ramey, Ramey, Chandler, McKinley & Zito, P.C., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION ON REHEARING

EVELYN V. KEYES, Justice.

On December 14, 2006 we issued an opinion on rehearing that granted the motion for rehearing of our opinion of May 19, 2005, filed by appellant, Maethenia Jordan. *See* TEX.R.APP. P. 49.7.[1] A dissenting opinion was also issued on December 14, 2006. Appellees, Sava, Inc. and John D. Moore, filed a response to the motion for rehearing. On January 5, 2007, we *sua sponte* withdrew the December 14, 2006 opinion on rehearing, dissenting opinion, and accompanying judgment to consider this case in light of *Bed, Bath & Beyond, Inc. v. Urista,* which was recently decided by the Texas Supreme Court. *See* 211 S.W.3d 753 (Tex.2006). We now deny the motion for rehearing, withdraw our opinion and judgment of May 19, 2005, and issue this opinion on rehearing and accompanying judgment in their stead.

Appellant, Maethenia Jordan, appeals a take-nothing judgment rendered in her personal injury suit against appellees, Sava, Inc. and John D. Moore. In seven issues, Jordan contends (1) the trial court erred in denying her challenges for cause of two jurors who admitted bias; (2) everyday rush-hour traffic in Houston does not constitute a "sudden emergency" justi-

---

1. Maethenia Jordan also filed a motion for rehearing en banc that we dismissed as moot. *See Brookshire Bros., Inc. v. Smith,* 176 S.W.3d 30, 40 & n. 2 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (supp. op. on rehearing).

fying a jury instruction; (3) Moore's and Sava, Inc.'s counsel improperly embellished and mischaracterized the court's charge; (4) an "eggshell skull" instruction should have been given to the jury; (5) the trial court should not have rendered a directed verdict for Sava, Inc.; (6) the jury's answer to question one, regarding Moore's liability, was wrong as a matter of law and was against the great weight and preponderance of the evidence; and (7) the jury's answer to question two, regarding damages, was against the great weight and preponderance of the evidence.

We affirm.

## Facts

On September 20, 1999, Moore was driving a tractor-trailer rig, minus the trailer, on Loop 610 North in Houston. The speed limits were a minimum of 40 and a maximum of 55 mph; Moore's speed was approximately 45 mph.[2] As Moore crested a hill just before the Wayside exit, he came upon a motionless line of cars in the same lane waiting to exit. The car directly in front of Moore swerved into the left lane; Moore swerved into the emergency lane to the right of the exit lane. Moore shifted down and intentionally "rode the guardrail" as he proceeded, to augment his attempt to bring the rig to a stop, but he drove over some grass on the side of the road that caused the rig to skid slightly. Moore passed as many as eight to 15 cars before the emergency lane merged into the exit lane and ended. To the right of the emergency lane was a drop-off over an embankment. When Moore realized he was running out of room as the emergency lane merged with Jordan's lane, Moore thought he could steer through an opening of 10 to 12 feet between Jordan's Ford Expedition and the car behind it. Instead, his tractor-trailer cab collided with the rear end of Jordan's Expedition, spinning the Expedition 180 degrees before traveling across the freeway and coming to rest against the divider between the oncoming lanes of traffic.[3]

Moore and his front-seat passenger, Jesse McGraw, an emergency medical technician (EMT), checked on Jordan and her passenger and called Emergency Medical Services (EMS). Jordan was taken to a local hospital by ambulance. She had injured her back, resulting in a number of physical and practical impairments to her life. A police officer who happened to be traveling along this route stopped to investigate the accident. He issued Moore a citation for "failure to control speed," but did not cite him for speeding.

Jordan sued Moore for negligence and sued the company that owned the tractor-trailer, Sava, Inc., for, among other causes of action, negligent entrustment under the doctrine of *respondeat superior*. After a jury trial in which the jury determined that Moore was not liable, the trial court rendered a take-nothing judgment for Jordan with prejudice.

## Challenges to Venire Members

In her first issue, Jordan contends the trial court erred by denying her challenges for cause to two jurors who she contends were biased in favor of Moore, thereby forcing her to use peremptory strikes on

---

**2.** Moore and his front-seat passenger estimated his speed as he came over the top of the hill to be anywhere from 35 to 50 mph. There is no evidence to show that he was exceeding the speed limit at the time he crested the overpass.

**3.** It is not clear from the record on appeal at precisely what time this accident occurred. Although Jordan contends in her brief that it was during "rush hour" traffic, she also testified at trial that it was "somewhere between five and six," and the parties referred at different times during the trial to the "afternoon" and to the "evening" of the accident.

these jurors instead of on two other jurors whom she found objectionable.

### Standard of Review

█ A person is disqualified to serve as a petit juror if he has a prejudice for or against a party in the case. TEX. GOV'T CODE ANN. § 62.105(4) (Vernon 2005). A person may be disqualified if the prejudice extends to the subject matter of the litigation, including damages for pain and suffering. *See Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963); *see also Houghton v. Port Terminal R.R. Ass'n*, 999 S.W.2d 39, 45–46 (Tex.App.-Houston [14th Dist.] 1999, no pet.). We review a trial court's decision to disqualify a panel member under an abuse of discretion standard. *Buls v. Fuselier*, 55 S.W.3d 204, 210 (Tex.App.-Texarkana 2001, no pet.). A trial court abuses its discretion in refusing to disqualify a venire member only if the record shows that the venire member was not able or willing to set aside personal beliefs to act impartially. *Id.* at 210. A trial court's overruling a challenge for cause carries with it an implied finding that bias does not exist to the degree that it constitutes disqualification. *Id.* at 209–10. Thus, when the evidence does not conclusively establish a venire member's disqualification, we consider the evidence in the light most favorable to the trial court's ruling. *Id.* at 210.

### Venire Member Number 17

█ During voir dire, venire member 17 expressed reservations about awarding a plaintiff damages for pain and suffering. The following colloquy took place:

[Counsel]: [I]n terms of an award above and beyond just medical bills, whether they have seen a doctor or not, would you have a hard time doing that?

[No. 17]: Yes.

[Counsel]: [G]iven that you feel that way . . . do you think you could be an impartial juror, given the fact that you

have those beliefs when at the end of this trial you will be asked—there will be a blank for pain and suffering and mental anguish.

[No. 17]: That is pretty tough. I haven't heard the case yet. Yes, I think I would have trouble. Would it affect me? Yes, because that is just the way I believe. That is the way I would feel.

Shortly thereafter, the trial court individually questioned this venire member, as follows:

[Court]: I think what we are dealing with here is the law allows the prevailing party who has suffered a personal injury in a proper case to recover their medical bills from a party that caused them that injury if certain findings are made. Assuming all of that, what he is asking you about is one of the things that the law allows you to recover. You can recover your medical bills, you can recover lost wages if you miss work because you were laid up. But if you suffer pain, the law allows you to be compensated in the proper case. If you have suffered mental anguish, the law allows you to be compensated for that in the proper case. The question is: can you award that in the proper case or can you sit here and say, I believe in awarding A, B, and C, but I don't believe in D?

[No. 17]: I think I would follow the instructions. Would it be real difficult for me to say, yes, I believe someone needs money for pain and suffering? Probably that would be a difficult thing. I am a pretty reasonable person. I just . . .

[Counsel]: There is nothing wrong with that.

[No. 17]: It is just really I can see the wages and all that stuff. I have dealt

with my father who was a doctor. It seems like sometimes people are just getting a little out of hand with prices and that is one area that I can see would get out of hand because there is no way to measure it.

[Counsel]: Are you going to penalize Ms. Jordan for it?

[No. 17]: No, I won't penalize her.

After the trial court denied Jordan's challenge for cause, Jordan used a peremptory strike to exclude venire member 17 from the jury.

Venire member 17's replies to the trial court's inquiries do not demonstrate that she would not have been able to set aside her personal beliefs to act impartially, thus penalizing Jordan. Accordingly, the trial court did not abuse its discretion in denying the challenge for cause to venire member 17. *See Buls,* 55 S.W.3d at 210 (holding that, trial court abuses discretion in refusing to disqualify only when record shows venire member unable or unwilling to act impartially); *see also Sosa v. Cardenas,* 20 S.W.3d 8, 11–13 (Tex.App.-San Antonio 2000, no pet.) (affirming trial court's denial of challenges for cause of several jurors who indicated bias against awarding damages for mental anguish, but agreed it would depend on evidence presented, and jurors did not indicate they would not follow court's instructions).

### *Venire Member Number 20*

■ In regard to venire member 20, there was little in the record to reflect her alleged bias. The following colloquy is the only one that occurred:

[Counsel]: You raised your hand.

[No. 20]: I think everybody suffers on a daily basis on pain and they don't get compensation.

[Counsel]: What if you had severe pain that prevented you from going to work?

[No. 20]: Well, you have your medical and everything is paid for. Pain and suffering, somebody is giving you something for pain and suffering, and therapy. Not really. I don't think that pain and suffering would be something that you would get unless it was a child or grandma or somebody that was with you and it is there, really.

This answer does not sufficiently demonstrate a degree of bias that would lead us to conclude that the trial court abused its discretion in denying Jordan's challenge for cause of venire member 20. *See Kiefer v. Continental Airlines, Inc.,* 10 S.W.3d 34, 39 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding trial court did not err in denying challenge for cause to juror who said he would have a "difficult time" awarding damages for pain and suffering). Jordan did not ask additional questions of this venire member or attempt to rehabilitate her in any way.

■ Although Jordan suggests in her reply brief that she had no obligation to investigate further, that position is not supported by applicable case law, because bias is not presumed in regard to a venire member's answers during voir dire; rather, it must be proved. *Buls,* 55 S.W.3d at 210. Nor is bias shown based on answers to general questions, because such questions are usually insufficient to provide the diligence required to probe a venire member's mind. *Id.* Jordan bore the burden of showing that venire member 20's state of mind would naturally lead to the inference that she could not act impartially. *See id.* at 209. Because she did not satisfy this burden, we hold that the trial court did not err in denying the challenge for cause to venire member 20.

We overrule Jordan's first issue.

### "Sudden Emergency" Instruction in Jury Charge

In her second issue, Jordan contends the trial court erred in submitting a "sudden

emergency" instruction to the jury over her objection.

**Standard of Review**

■ A sudden emergency instruction advises the jurors that if the evidence shows that conditions beyond the party's control caused the accident in question or that the conduct of some person not a party to the litigation caused it, the jury does not have to place blame on a party. *See Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 432 (Tex.2005). The purpose of the instruction is to advise the jurors, in an appropriate case, "that they do not have to place blame on a party to the suit if the evidence shows that conditions beyond the party's control caused the accident in question." *Id.*

■ For an instruction on sudden emergency to be proper, the evidence must support the elements of the sudden emergency defense, *i.e.*, that (1) an emergency situation arose suddenly and unexpectedly; (2) the emergency situation was not proximately caused by the negligent act or omission of the person whose conduct is under inquiry; and (3) after an emergency situation arose that to a reasonable person would have required immediate action without time for deliberation, the person acted as a person of ordinary prudence would have acted under the same or similar circumstances. *See Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex.1995); *Evans v. Allwhite*, 111 S.W.3d 282, 286 (Tex.App.-Texarkana 2003, no pet.); *Priest v. Myers*, 598 S.W.2d 359, 363 (Tex.App.-Houston [14th Dist.] 1980, no writ); *see also Dillard*, 157 S.W.3d at 432 n. 4.

■ If there is conflicting evidence regarding whether there was a sudden emergency, the trial court should submit the requested instruction. *Oldham v. Thomas*, 864 S.W.2d 121, 127 (Tex.App.-Houston [14th Dist.] 1993), *rev'd in part on other grounds*, 895 S.W.2d 352 (Tex. 1995). Indeed, if there is *any* support in

the evidence for a sudden emergency instruction, the instruction is properly given. *Louisiana–Pacific Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex.1998); *Francis v. Cogdell*, 803 S.W.2d 868, 871 (Tex.App.-Houston [1st Dist.] 1991, no writ); *see also Reinhart v. Young*, 906 S.W.2d 471, 474 (Tex.1995). A trial court has "great latitude" in determining its instructions to the jury. *Knighten*, 976 S.W.2d at 676; *Evans*, 111 S.W.3d at 284; *Francis*, 803 S.W.2d at 871; *see also Dillard*, 157 S.W.3d at 432–34 (discussing overlapping nature of inferential rebuttal instructions used when defendants blame occurrence on something or someone other than themselves). Thus, if a doctrine has been pleaded, and there is some evidence of probative value to support its application, the trial court has a duty to instruct the jury to assist it in reaching its verdict. *DeLeon v. Pickens*, 933 S.W.2d 286, 290 (Tex.App.-Corpus Christi 1996, writ denied); *see Charter Oak Fire Ins. Co. v. Taylor*, 658 S.W.2d 227, 229 (Tex. App.-Houston [1st Dist.] 1983, no writ).

■ On appeal, the reviewing court must examine the pleadings, the evidence presented, and the jury charge; any error regarding a requested instruction will not be deemed reversible unless it "was reasonably calculated to cause and probably did cause rendition of an improper judgment." *DeLeon*, 933 S.W.2d at 290–91; *see Knighten*, 976 S.W.2d at 676.

**Evidence of Sudden Emergency**

The sudden emergency instruction submitted to the jury stated,

"Emergency" means if a person is confronted by an "emergency" arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in

such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances. The instruction was in the form approved by the Texas Supreme Court. *See Thomas*, 895 S.W.2d at 360.

For an instruction on sudden emergency to be proper, the evidence must demonstrate the elements of a sudden emergency: (1) the emergency condition arose suddenly and unexpectedly; (2) the condition was not proximately caused by the negligent act or omission of the person whose conduct is under inquiry; and (3) after a condition arose that to a reasonable person would have required immediate action without time for deliberation, the person acted as a person of ordinary prudence would have acted under the same or similar circumstances. *See Thomas*, 895 S.W.2d at 360; *Evans*, 111 S.W.3d at 286; *Priest*, 598 S.W.2d at 363. To determine whether a sudden emergency instruction was proper in this case, we must determine whether the evidence raised a fact issue as to each of the elements of sudden emergency.

### Sudden and Unexpected Condition

A number of courts have submitted a sudden emergency instruction when an act of nature was a factor in a collision. *See Knighten*, 976 S.W.2d at 676 (sudden emergency instruction did not cause rendition of improper judgment when defendant struck plaintiff from behind after plaintiff abruptly applied her brakes on wet street in rain); *Francis*, 803 S.W.2d at 871 (testimony that rear-end collision was caused by plaintiff suddenly slamming on brakes at yellow light during morning rush hour in rain on wet and slick roads supported trial court's instruction on sudden emergency); *Crowley v. Babolcsay*, 611 S.W.2d 492, 494 (Tex.App.-Austin 1981, writ ref'd n.r.e) (sudden emergency instruction was warranted when evidence showed defendant swerved into wrong side of the road to pass car in front of him, leading to head-on collision with plaintiff on top of "blind" hill on rainy afternoon).

However, an act of nature is not a necessary prerequisite for a sudden emergency. Actions by other vehicles can cause a sudden emergency. *See DeLeon*, 933 S.W.2d at 288, 294 ("emergency" arose after truck darted across four lanes from a private driveway causing actions resulting in collision). Moreover, even in cases involving acts of nature, the emergency condition is not said to be the act of nature, but rather the driver's encountering another vehicle under sudden and unexpected circumstances not created by his own wrongful actions, whether it is a stopped car, a car slowing down, or an oncoming car in the same lane of traffic. *See Reinhart*, 906 S.W.2d at 474 (finding no error in submission of both "unavoidable accident" instruction and sudden emergency instruction when driver rear-ended car stopped on blind side of overpass);[4] *Bounds v. Scurlock Oil Co.*, 730 S.W.2d 68, 71 (Tex. App.-Corpus Christi 1987, writ ref'd n.r.e.) (holding sudden emergency instruction not error when driver who struck car on shoulder was traveling around curve just before accident and had been "blinded" by headlights of oncoming car). Similarly, the

---

4. The supreme court noted that the "unavoidable accident" doctrine—which applies to "an event not proximately caused by the negligence of any party to it"—logically subsumes the sudden emergency doctrine. *Reinhart v. Young*, 906 S.W.2d 471, 472, 474 (Tex.1995). It observed, "The [unavoidable accident] instruction is most often used to inquire about the causal effect of some physical condition or circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction of view, or to resolve a case involving a very young child who is legally incapable of negligence." *Id.* at 472.

"sudden emergency" here was Moore's coming upon stopped or slow-moving vehicles on the blind side of an overpass on a freeway.

Jordan characterizes the road conditions as being standard rush-hour, bumper-to-bumper traffic, implying that stoppages on the freeway were to be expected. A sudden stoppage on a freeway or any road is always a possibility regardless of the amount of congestion on the road, the time of day, or the type of traffic for many different reasons, such as broken down cars, traffic accidents, and traffic congestion. But the issue here is not the possibility of these occurrences, but rather the expectation of these occurrences.[5] We note, in this regard, that, other than references at different points during trial that the accident occurred in the afternoon or in the evening, the exact time of the accident is not specified, except by Jordan, who stated that it was "somewhere between five and six," implying that congestion should have been anticipated. Jordan also testified, however, that the traffic was "busy going both directions." Nor is there any evidence to show that traffic in lanes other than the exit lane to Wayside, on the far side of the overpass, was bumper-to-bumper.[6] Rather, Moore stated that he was traveling the same speed as the car directly in front of him when he crested the overpass.

Moore testified that he saw neither stopped vehicles nor vehicles that were slowing down ahead of him before he came down the blind side of the overpass. He also testified that he saw no brake lights from vehicles ahead of him that would indicate heavy traffic or vehicles that were slowing down or stopping entirely. Nor did he see any indication of congestion prior to encountering the emergency, as any congestion that existed was on the blind side of the overpass. Moore could not have known what the cars on the blind side of an overpass were doing unless there was some indication by cars in front of him slowing down before he himself drove over the overpass.

We hold that there is evidence from which the jury could have concluded that the emergency condition arose suddenly and unexpectedly. We further hold that it is a question of fact for the jury to decide whether it is reasonable for a driver to expect that traffic will be at a standstill on the blind side of an overpass under the conditions present when there is no prior indication of that standstill.

### Pre–Collision and Post–Collision Negligence and Proximate Cause

The sudden emergency doctrine is applicable in cases involving rear-end collisions when the defendant's negligent actions are a *result* of emergency

---

5. Several Texas appellate courts have found a "sudden emergency" in situations that may not have technically *come about* suddenly, but where defendant *became aware* of the condition rather suddenly, but before the defendant's subsequent negligence. *See, e.g., Lakey v. Cauley*, No. 14–98–01221–CV, 2000 WL 33354703, at *4–5 (Tex.App.-Houston [14th Dist.] June 21, 2001, pet. denied) (not designated for publication) (emergency arose when defendant parked car on side of road with headlights pointing in direction from which plaintiff's vehicle was approaching for at least as long as it took for plaintiff to have seen them); *Gonzales v. Castillo*, No. 04–99–

00063–CV, 2000 WL 84537, at *3 (Tex.App.-San Antonio Jan.26, 2000, no pet.) (not designated for publication) (emergency arose when driver applied his brakes after seeing traffic abruptly slowing and vehicles stopped on rainy, slick road).

6. Unlike the situation in *Turnbull v. McIntosh*, No. 01–98–01127–CV, 2001 WL 493169, at *14 (Tex.App.-Houston [1st Dist.] May 10, 2001, pet. denied) (not designated for publication), there was no evidence in the record of heavy traffic or even of normal bumper-to-bumper rush hour traffic.

conditions, but not when the defendant's actions *prior* to the emergency are negligent. *See, e.g., DeLeon*, 933 S.W.2d at 294; *Oldham*, 864 S.W.2d at 126–27. In short, the evidence must be such that the jury could find that the collision was not proximately caused by the defendant's own pre-emergency negligence.

Here, the jury was instructed on negligence and proximate cause as follows:

"Negligence," means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using *ordinary care* would have foreseen that the event, or some similar event, might reasonably result therefrom.

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

The charge follows the Texas Pattern Jury Charges on negligence, proximate cause, and sole proximate cause. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 2.1, 2.4, 3.2 (2003). Jury Question 1 asked whether appellant's negligence proximately caused "the occurrence in question." The jury responded, "No." We must determine, therefore, whether the jury's negative answer has support in the record.

While the law provides that a motorist driving behind another vehicle must drive at a reasonable speed, keep back a reasonable distance, and keep his vehicle under reasonable control to provide for the contingency that a vehicle in front may suddenly stop, the mere occurrence of a rear-end collision does not establish negligence as a matter of law. *DeLeon*, 933 S.W.2d at 289. Rather, whether a rear-end collision raises an issue of negligence or establishes negligence as a matter of law depends on all the facts and circumstances of the case. *Id.*

The undisputed evidence establishes that Moore acted *after* the emergency arose as a person of ordinary prudence would have acted under the same or similar circumstances. Moore and McGraw both testified that the line of stopped cars was so close when Jordan crested the hill that evasive action was necessary. Jordan likewise admitted that evasive action to avoid a collision is necessary when a driver comes over an overpass and finds traffic stopped in his lane. The undisputed evidence establishes that when Moore came over the overpass in the exit lane and saw the stopped cars directly in front of him, he immediately took the necessary evasive action—swerving to the right into the emergency lane to avoid hitting the stopped cars in front of him or the traffic in the left-hand lane, shifting down and riding the guard rail to slow his rig as he traveled past the cars in the exit lane, and attempting to take advantage of an opening between Jordan's vehicle and the car in front of her when the emergency lane merged into Jordan's lane, rather than heading over the embankment. Nevertheless, Moore hit Jordan's car.

There is conflicting evidence, however, as to whether Moore's actions *prior* to his coming over the overpass demonstrated a failure to use ordinary care under the circumstances. Jordan presented evidence that the collision occurred at rush hour and that Moore was familiar with traffic on Loop 610, although he did not often take the Wayside exit. Moore acknowledged that it would take at least 100 feet to stop his cab at 40 mph, and the record reflects that he received a citation for "failure to control speed." Moore testified that he was not following the car in front of him at a "safe following distance." Moore also stated that he would have run over the car in front of him "[b]ecause I was following too close, probably, and I wasn't—I would not have been able to stop as fast as he would." Moore's opinion, however, is not conclusive on the issue of whether he was following too closely. Here, as in *Deviney v. McLendon,* "defendant's estimates of speed, distance, etc., ... were no more than his opinions." 496 S.W.2d 161, 164 (Tex.App.-Beaumont 1973, writ ref'd n.r.e.). "The rule is settled that a party is not necessarily bound to a fact which he admits only by way of opinion." *Id.*

Although Moore's opinion is some evidence of his distance, other evidence suggests that he was not following too closely or speeding. Moore was driving between 35–50 mph, which was well within the 40–55 mph speed limit. There was no evidence that traffic was bumper-to-bumper at any point other than in the exit lane on the blind side of the overpass; rather, the evidence shows that the freeway was busy and that Moore was traveling at the same speed as the car in front of him when both crested the overpass. Moore testified that there was no warning, such as slowing vehicles or brake lights coming on, to signal the stopped traffic over the overpass. Nor is there any evidence that Moore was negligent in failing to keep a proper look-out prior to the emergency. Rather, McGraw testified that Moore was driving carefully before the accident and that neither Jordan nor Moore was at fault. Finally, the officer who saw the accident and cited Moore for failing to control his speed testified that he did not measure the skid marks or the point of impact of the vehicles and did not know what distance separated Moore's and Jordan's vehicles; rather, the evidence of Moore's failure to control speed was "[t]he evidence of him striking the stopped vehicle." Thus, there is a fact question as to whether Moore's negligent acts *before* he came over the overpass were a proximate cause of the collision.

The inclusion of a sudden emergency instruction does not constitute error when the evidence conflicts as to whether a driver's actions before the emergency were suspect. *See Oldham,* 864 S.W.2d at 127; *DeLeon,* 933 S.W.2d at 294. Rather, if there is *any* support in the evidence for a sudden emergency instruction, the instruction is properly given. *Francis,* 803 S.W.2d at 871. We conclude that there was support in the evidence for the jury's negative finding that Moore's negligence prior to the emergency was not a proximate cause of the collision.

This case is virtually identical in this regard to *Knighten,* a Texas Supreme Court case involving a three-party rear-end collision that occurred when it was raining and the streets were wet. 976 S.W.2d at 674. Knighten, the plaintiff, had to stop suddenly because the car in front of her stopped without warning, after which a truck hit her from behind and was hit by a second truck, causing the first truck to strike her a second time. *Id.*

As here, the issue was whether the defendant's following too closely to maintain a safe distance was negligence per se. At issue was the standard of care in article

6701d of the Texas Civil Statutes, which had, by the time of the opinion, been repealed and codified as section 545.062(a) of the Texas Transportation Code, entitled "Following Distance." *See Knighten,* 976 S.W.2d at 675 (quoting former article 6701d). In language virtually identical to former article 6701d, current section 545.062(a) provides:

An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

TEX. TRANSP. CODE ANN. § 545.062(a) (Vernon 1999).

The supreme court held that "a statute that requires a driver [to] proceed *safely* imposes on the driver a duty of reasonable care, thus precluding a negligence per se instruction." *Knighten,* 976 S.W.2d at 675. In rejecting Knighten's argument that a sudden emergency instruction was improper, the supreme court stated, "The trial court has great latitude and considerable discretion to determine necessary and proper jury instructions.... If an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." *Id.* at 676.

Jordan, however, cites *Priest,* 598 S.W.2d at 363–64 and *Deviney,* 496 S.W.2d at 166, as support for her contention that the submitted instruction was improper because of Moore's negligence prior to the emergency. We find these cases factually distinguishable. In *Priest,* the driver who struck the car directly in front of him was looking back over his shoulder at the time of impact. 598 S.W.2d at 361. In *Deviney,* the driver was traveling in the outside lane when he changed lanes to avoid a vehicle entering from the ramp and hit the car directly in front of him in the lane into which he had he moved. 496 S.W.2d at 163.

In both *Priest* and *Deviney,* the evidence established that the drivers failed to keep a proper lookout, and there was nothing to suggest that their forward view was in any way obstructed. Here, in contrast, Moore had no visual cues to warn him that he was about to encounter a line of stopped cars—he was cresting a blind overpass and saw no brake lights as he did so. Moreover, there is conflicting evidence as to whether he was driving too fast or following too closely for the traffic conditions prior to his cresting the hill. *See DeLeon,* 933 S.W.2d at 294 (concluding sudden emergency doctrine was inapplicable in cases like *Deviney* and *Priest* when defendant's deemed negligence prior to emergency caused collision, but sudden emergency instruction was not error when there was fact issue as to defendant's negligence in failing to maintain safe distance prior to emergency).

In sum, we conclude that the record contains evidence from which the jury could reasonably have inferred that the line of stopped cars on the blind side of the overpass was sudden and unexpected, that Moore's actions prior to the emergency were not a proximate cause of the collision, that the emergency, to a reasonable person, would have required immediate action without time for deliberation, and that Moore's actions after the emergency condition arose did not differ from those of a person of ordinary prudence under the same or similar circumstances.

We note further that the sudden emergency instruction merely told the jury that they did not have to place blame on a party to the suit. *See Dillard,* 157 S.W.3d at 432 ("The purpose of [a sudden emergency instruction] is to advise the jurors,

in the appropriate case, that they do not have to place blame on a party to the suit if the evidence shows that conditions beyond the party's control caused the accident in question[.]"); *Bed, Bath & Beyond,* 211 S.W.3d at 757 ("[S]ometimes accidents are no one's fault, and an unavoidable accident instruction ... simply explains to the jury that they are not required to find someone at fault."). We conclude that the instruction merely allowed the jury to consider all of the circumstances in answering whether Moore's negligence proximately caused the occurrence in question.

Accordingly, we conclude there was evidence of probative value to support submission of the sudden emergency instruction to the jury. Therefore, the trial court did not err in submitting the instruction.

We overrule Jordan's second issue.

### Improper Embellishment of Jury Charge

In her third issue, Jordan contends Moore's counsel improperly embellished the court's charge, resulting in a unjust verdict. In closing argument, Moore's counsel said to the jury:

> The other thing that is really important here that applies in this case is the last instruction that Judge Wise will give you about an emergency. It would not be permitted for me to talk about an emergency if it wasn't proper. The reason it is proper is because the fact situation is exactly what we are talking about as motorists. This could apply to an accident or any other type of emergency situation. He is confronted by an emergency arising suddenly and unexpectedly. That is true. Absolutely, it is true. He could not see what the traffic conditions were like over the hill. And it wasn't caused by anything that he did.

Jordan relies on *Timberwalk Apartments, Partners v. Cain,* 972 S.W.2d 749, 755 (Tex.1998), to support her argument that a

party is not permitted to embellish or mischaracterize the charge. In *Timberwalk,* however, counsel flagrantly misstated the court's instruction, and the appellant timely objected at trial. *Id.* Here, in contrast, counsel emphasized the instruction, but did not misstate it, and Jordan did not object to counsel's closing argument. Thus, she has not preserved error in regard to this comment. *See* Tex.R.App. P. 33.1.

We overrule Jordan's third issue.

### Sufficiency of the Evidence

In her sixth issue, Jordan contends the evidence was legally and factually insufficient to sustain the jury's answer to question one, "Did the negligence, if any, of John D. Moore proximately cause the occurrence in question?" to which the jury answered, "No."

### *Standard of Review*

Because Jordan attacks the legal and factual sufficiency of an adverse jury finding on which she had the burden of proof, she must demonstrate that the evidence conclusively establishes, as a matter of law, all facts in support of the issue (for rendition), or, alternatively, that the jury's adverse finding is against the great weight and preponderance of the evidence (for remand). *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Harris County v. Vernagallo,* 181 S.W.3d 17, 29 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). In reviewing a claim that the evidence conclusively establishes liability as a matter of law, we consider evidence and inferences supporting the jury's finding and ignore all evidence and inferences to the contrary. *Havner v. E-Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex. 1992); *Sterner,* 767 S.W.2d at 690. In reviewing a claim that the verdict is against the great weight and preponder-

ance of the evidence, we consider and weigh all of the evidence and may set aside the verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain,* 709 S.W.2d at 176. The jury may believe one witness and disbelieve another, and it may resolve inconsistencies in any testimony. *Eberle v. Adams,* 73 S.W.3d 322, 327 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

### Evidence Adduced at Trial

The evidence and inferences supporting the jury's finding that Moore was not negligent consisted of (1) Moore's testimony that he had no warning as he crested the overpass about the line of cars stopped just over the overpass in the exit lane because he could not see the other side of the hill and saw no brake lights; (2) Jesse McGraw's testimony confirming these assertions and McGraw's expressed belief that neither Moore nor Jordan was at fault in the accident and that Moore was driving carefully; and (3) evidence that Moore was not speeding, and he was traveling at the same speed as the general traffic before he crested the hill. This evidence is legally sufficient to sustain the jury's finding.

Other evidence in the record included (1) the police officer's conclusion that Moore was following too closely and his citation of Moore for "failure to control speed"; (2) Moore's admission that it would take at least 100 feet to stop at 40 mph; and (3) Moore's passing a number of cars before his truck hit Jordan's Expedition. Although this Court may have reached a different conclusion based on all of the evidence, we cannot say that the jury's finding was clearly wrong and unjust. Accordingly, we hold that the evidence was factually sufficient to sustain the verdict.

We overrule Jordan's sixth issue.

### Conclusion

Because we have held that the trial court did not abuse its discretion by submitting a "sudden emergency" instruction to the jury and that the evidence was legally and factually sufficient to sustain the jury's finding that Moore was not liable for the accident, the remainder of Jordan's issues regarding damages and negligent entrustment are moot, and we decline to address them.

We affirm the judgment of the trial court.

Chief Justice RADACK, concurring.

SHERRY RADACK, Chief Justice, concurring on rehearing.

I would conclude that the trial court erred in giving the sudden emergency instruction, but that the error was harmless. Accordingly, I concur in the judgment.