Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-09-00606-CV

Thomas **BENHAM**,
Appellant

v.

Robert **LYNCH**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-07047
Honorable Martha Tanner, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
            Karen Angelini, Justice
            Rebecca Simmons, Justice

Delivered and Filed:  February 2, 2011

REVERSED AND REMANDED

Appellee Robert Lynch's motion for rehearing is denied.  This Court's opinion and judgment dated August 31, 2010, are withdrawn, and this opinion and judgment are substituted. We substitute this opinion to clarify our judgment.

This appeal arises from two different automobile accidents wherein Appellee Robert Lynch was rear-ended by Appellant Thomas Benham and then, approximately four months later,

was rear-ended by Robert Kenworthy.[1]  Based on the injuries to his neck from both accidents, Lynch asked the jury to apportion causation and damages resulting from each accident.  The jury assessed damages in the amount of $157,309.94 against Benham and $9,220.40 against Kenworthy.  On appeal, Benham argues that the evidence is legally and factually insufficient to support the jury's verdict and that the trial court erred in failing to give a "sudden emergency" instruction in the court's charge.  Because the evidence raised the sudden emergency defense, and the trial court refused to submit such an instruction to the jury, we reverse the trial court's judgment solely with regard to Appellant Thomas Benham and remand this matter for a new trial consistent with this opinion.

### FACTUAL BACKGROUND

This negligence case arises out of two separate automobile accidents that occurred approximately four months apart.  On September 4, 2004, Benham, who was driving a pick-up, rear-ended Lynch.[2]  As Benham exited his vehicle, he immediately apologized, explaining that his brakes failed prior to impact.  More specifically, Benham told Lynch that his brakes had just been repaired and said, "I guess me and my buddies didn't bleed it well enough."  Within hours of the accident, Lynch's neck began feeling "stiff and achy" and he sought treatment at a minor emergency clinic.  Dr. Hector Samaniego evaluated Lynch and prescribed physical therapy. Following the first accident, Lynch missed twenty-nine days of work due to his injuries.

On January 19, 2005, Lynch was leaving physical therapy and Dr. Samaniego's office when he was again rear-ended, this time by Robert Kenworthy.  Immediately following the accident, Lynch reported "instant pain . . . that it was severe pain and [that he] could not move

---

[1]  Defendant Robert Kenworthy did not appeal the trial court's judgment.

[2]  Lynch was driving an ambulance while on duty as a paramedic.

for a few minutes." An ambulance took Lynch from the accident and transported him to the hospital. He further reported that his pain was worse following the second accident.

At trial, Lynch explained the difference between the symptoms associated with his first and second accidents. He described that the "[f]irst collision was very bad. It brought on a new onset of physical impairment that I've never had in the past. It took a lot more to get me to where I needed to be." Additionally, Lynch opined, "I am pretty sure I would have [had the surgery] before the second accident" and "[t]he day before the collision . . . I felt like I was getting worse. After the second accident, being on pain pills again and the therapy—ongoing therapy, I guess that's the only reason why I was able to go back, but mostly for the pain pills." Lynch depicted the second accident as "the needle that busted the bubble. It was just traumatic after that." Lynch concluded that he felt worse after the second accident, and that he planned to have suggested back surgery as soon as he could afford it.

Two medical experts, Dr. Karl Swann and Dr. Arnulfo Garza-Vale, both neurosurgeons, testified at trial. Both agreed that Lynch's condition worsened after the second accident with Kenworthy. Dr. Swann testified that Lynch's condition had progressed such that he recommended surgery. The cost of such surgery would range between $40,000 and $75,000, and the surgery may result in the patient's inability to return to work for three to four months. However, neither doctor testified whether the costs of future medical care were attributable to the first or second accident. With regard to his loss of income, Lynch explained that after the first accident, he missed a total of 232 hours of work, and after the second accident, he missed an additional thirty-two hours of work. The jury found both Benham and Kenworthy negligent and that their negligence was the proximate cause of their respective accidents; yet, the jury awarded

damages against Benham, the driver in the first accident, in the amount of $157,309.94 and damages in the amount of $9,220.40 against Kenworthy, the driver in the second accident.[3]

SUFFICIENCY OF THE EVIDENCE

Benham argues that the evidence is legally insufficient to support the damages as apportioned by the jury. The thrust of Benham's complaint is that the evidence was overwhelming that the majority of Lynch's damages were attributable to injuries sustained in the second accident, but the jury wrongly apportioned seventeen times more damages to Benham.[4]

## A. Standard of Review

In a challenge to the legal sufficiency of the evidence, an appellate court reviews the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it and crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822–23, 827 (Tex. 2005). More than a scintilla of evidence exists, and the evidence is legally sufficient, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *See Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709–10 (Tex. 2003); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782–83 (Tex. 2001). However, "'[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla

---

[3] Damages were awarded as follows:

| | **Benham** | **Kenworthy** |
| --- | --- | --- |
| Physical pain and mental anguish (past) | $20,000 | $5,000 |
| Physical pain and mental anguish (future) | $10,000 | |
| Loss of earning capacity (past) | $3,500 | $422.40 |
| Loss of earning capacity (future) | $9,000 | |
| Physical impairment (past) | $30,000 | |
| Physical impairment (future) | $12,500 | |
| Medical expenses (past) | $22,309.40 | $1,800 |
| Medical expenses (future) | $50,000 | $2,000 |
| **Total** | **$157,309.94** | **$9,220.40** |

[4] $157,309.94 for the first accident and $9,220.40 for the second.

and, in legal effect, is no evidence.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

**B. Causation**

Specifically, Benham complains that there is legally insufficient evidence of causation to determine the injuries and damages from each accident. It is evident from the jury's award that it apportioned the full cost of proposed surgery and the resulting lost income to the first accident with Benham rather than the second accident with Kenworthy. Benham complains that the jury completely disregarded the two medical experts' opinions. He argues that there was no expert testimony that the cause of Lynch's need for surgery was the first accident and both doctors concurred that future surgery was attributable to the second accident with Kenworthy. Because causation evidence must be provided by expert testimony, and the only expert testimony on causation attributed the need for surgery to the second accident, Benham concludes that there is no evidence to support the jury's award of damages against him.

*1. Required Expert Testimony on Causation*

The general rule has long been that "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007).[5] The necessity for neck surgery and its cause is generally not within the experience of the ordinary layperson, but injury as a result of a car accident could fall within the knowledge and experience of an ordinary juror. *Id.* To constitute evidence of causation, a medical expert's opinion must rest on reasonable medical probability. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995); *Ins. Co. of N. Am. v. Myers*,

---

[5] However, there is an exception when lay testimony can support causation. *Id.*; *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984). In limited circumstances: "the existence and nature of certain basic conditions, proof of a logical sequence of events, and temporal proximity between an occurrence and the conditions can be sufficient to support a jury finding of causation without expert evidence." *Guevara*, 247 S.W. 3d at 667.

411 S.W.2d 710, 713 (Tex. 1966). This rule applies whether the expert expresses his opinion via testimony or through admitted medical records. In the present case, the testimony before the jury on causation included the depositions and medical records of experts Dr. Swann and Dr. Garza-Vale, and records of treating physician Dr. Samaniego.

2. *The Testimony*

In addition to expert testimony, Benham points to the nature of the two different accidents and the immediate aftermath as overwhelming evidence that the second accident caused the injury that necessitated surgery. The first accident caused minor damage, and an incident report noted, "neither of the people involved were injured." After the first accident, treatment ensued over the course of four weeks, until Lynch reported to a doctor that he "felt like a million bucks." Following the second accident, Lynch felt "instant pain" of a quality so severe that it frightened him. He was removed from the scene via ambulance and taken right to the hospital.

However, there is also conflicting testimony in the record concerning the extent of Lynch's injuries. Lynch reported that after the first accident he suffered severe neck pain, numbness in his left hand and fingers, and pain in the back side of the arm to shoulder; he could not move his neck to the left; and he could not sleep without Vicodin. Additionally, Lynch explained that he could no longer work extra shifts (where he earned time and a half) and, due to his continuous pain, his work schedule decreased from five days a week to four days a week, and finally down to three days per week. His pain continued, such that he obtained an appointment for a consultation with Dr. Swann prior to the second accident. But he saw Dr. Swann for medical treatment only after the second accident. Next, we turn to the expert testimony in the record.

Benham contends that expert testimony on causation is required to sustain the jury verdict, and that the conflicting and confusing expert opinions provide no evidence from which the jury could apportion damages relating to future surgery and lost income to the first accident. As a threshold matter, both Dr. Swann and Dr. Garza-Vale testified that all opinions provided during their depositions were based on a reasonable degree of medical probability and certainty. As Lynch points out, both doctors agreed that the second accident exacerbated Lynch's injuries. Both also made a number of statements that would support the jury's award. *See Lee Lewis Constr., Inc.*, 70 S.W.3d at 782–83 (holding evidence is legally sufficient when it furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence). In other words, viewing the record in the light most favorable to the jury's award, the jury could have reasonably concluded surgery was necessary due to the injuries Lynch sustained in the first accident. *Id*.

Specifically, Dr. Swann opined "that the first accident caused some type of injury to [Lynch's] neck," and that the second accident "exacerbated" the injury. Additionally, Lynch's MRI after the second accident confirmed the herniations at C5-6 and C6-7 reflected by Lynch's MRI after his first accident, but showed no changes after the second accident. Dr. Swann conceded, at various points in his testimony, that it would be difficult to pinpoint which of the two accidents actually caused Lynch's need for surgery. Rather than specify which accident triggered the need for surgery, Dr. Swann suggested Lynch needed surgery because of injuries he sustained from "a combination of both [the first and second accidents]." Moreover, when asked to proffer his opinion on what prompted the need for surgery, Dr. Swann responded: "Well, I think in this particular case it was the injury that he had to his neck that has persisted over time and has evolved the way something like that would over the course of two-plus years."

Dr. Garza-Vale testified that he believed Lynch to be suffering not from herniation, but from spondylosis, a process that takes place over years, and not weeks or days. He explained, however, "sometimes there's an event which causes you to start to feel [the pain from spondylosis]." Here, Dr. Garza-Vale regards the first accident as "an event that caused Mr. Lynch to start feeling [the pain from spondylosis]." Additionally, Dr. Garza-Vale confirmed "one way to look at [Lynch's need for surgery]" is by "adding together" the injuries Lynch sustained in the first and second accident. Through this statement, Dr. Garza-Vale necessarily admitted that a jury could determine Lynch needed surgery as a result of both accidents. In fact, Lynch's counsel asked Dr. Garza-Vale: "It's a combination of both accidents that makes it necessary for his surgery at this time. Do you agree with that?" In response, Dr. Garza-Vale asserted, "Well, again, that's one way to look at it. I mean, you could look at it different ways."

*3. Analysis*

We must bear in mind that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The jury is free to reject testimony of any witness, including even uncontroverted expert testimony. *See Waltrip v. Bilbon Corp.*, 38 S.W.3d 873, 880–82 (Tex. App.—Beaumont 2001, pet. denied) (upholding jury's award of medical expenses, but holding that no pain and suffering was rational if jury believed plaintiff was suffering from degenerative condition unrelated to the automobile accident). Moreover, expert testimony regarding expenses incurred has evidentiary significance, but is not binding on the jury. *See Prati v. New Prime, Inc.*, 949 S.W.2d 552, 556 (Tex. App.—Amarillo 1997, writ denied). The fact that the doctors' conclusions potentially conflict with each other does not make the opinion unreliable or

unscientific. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 727 (Tex. 1998); *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995).

Both parties agree that Lynch sustained injuries in the first accident, and that he suffered an aggravation from the second accident. Although the expert testimony does not specifically address the precise proportion of injury attributable to each accident, evidence certainly showed that the first accident initiated the injury that caused pain, which had not subsided and for which Lynch had been referred to Dr. Swann, a neurosurgeon. The significance of the first accident was bolstered by Lynch's testimony that: (1) he missed twenty-nine days of work following the first accident, as compared to only four days after the second accident; (2) immediately prior to the second accident he was "getting worse" and his symptoms were not improving; and (3) he felt he would have needed surgery even without the second accident. The jury could have reasonably concluded that Lynch's injuries were overwhelmingly the result of a preexisting condition caused by the first accident with Benham. *See Waltrip*, 38 S.W.3d at 879; *Stephens v. Petry*, No. 09-09-00078-CV, 2009 WL 6031288, at *4 (Tex. App.—Beaumont Mar. 11, 2010, no pet.). Accordingly, based upon a review of the entire record, there is more than a scintilla of evidence to support the jury's award and the evidence is, therefore, legally sufficient. We, therefore, overrule Benham's legal sufficiency issues on appeal. *See Lee Lewis Constr., Inc.*, 70 S.W.3d at 782–83.

### PROPOSED JURY INSTRUCTION

Benham next argues that the trial court erred in failing to include an instruction on sudden emergency in the court's charge because there was evidence of his sudden, unexpected brake failure. Lynch, however, responds that an instruction was not appropriate because Lynch's negligence helped create the emergency. Further, because the clerk's record contains neither a

proposed instruction on sudden emergency nor an objection to the charge, the issue is waived. Notably, both parties agree that Benham submitted a proper written instruction regarding "sudden emergency" to the court, but that it was not available for the clerk's record.[6]

## A. Waiver

When the trial court omits a requested instruction from the jury charge, a complaining party must request and tender a substantially correct instruction *in writing*. TEX. R. CIV. P. 278; *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 158 (Tex. App.—San Antonio 2008, pet. denied). Texas Rule of Civil Procedure 273 provides that "[a] request by either party for any questions, definitions, or instructions shall be made separate and apart from such party's objections to the court's charge." TEX. R. CIV. P. 273; *see Miller v. Kendall*, 804 S.W.2d 933, 938 (Tex. App.— Houston [1st Dist.] 1990, no writ). For purposes of review, the clerk's record must contain the proposed instruction. *Yzaguirre v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, No. 04-09-00550-CV, 2010 WL 1404620, at *1 (Tex. App.—San Antonio Apr. 7, 2010, no pet. h.). In *Yzaguirre*, this court held that when the requested instruction is not contained in the clerk's record, and not attached to appellant's motion for new trial, an appellate court is "unable to determine whether the proposed instruction amounts to a substantially correct instruction." *Id.* There is an important distinction, however, between the *Yzaguirre* case and the case before us. In *Yzaguirre*, the record did not support that the appellant submitted a written, substantially correct jury instruction to the trial court. *Id.* In the present case, the record reflects and the

---

[6] Lynch's counsel acknowledged that the proposed charge included in Benham's appendix is a copy of the proposed charge provided to the trial court at the charge conference, as referenced in the reporter's record. The proposed sudden emergency instruction is from the Texas Pattern Jury Charges P.J.C. 3.3 (2006). *See* Comm. on Pattern Jury Charges, State Bar of Tex., TEXAS PATTERN JURY CHARGES P.J.C. 3.3 (2006).

parties agree that Benham's counsel submitted the proposed charge to the court; it just could not be located for the clerk's record.

Counsel for Lynch objected to the inclusion of the sudden emergency instruction as confusing and inapplicable. The record is clear that the attorneys and the trial court clearly understood Benham's argument and requested instruction for sudden emergency. In light of Lynch's acknowledgement that the proposed charge included in Benham's appendix is a copy of the written instruction tendered to the trial court, we conclude that Benham preserved error for appellate review.

## B. Sudden Emergency Instruction

### 1. Standard of Review

The trial court's decision to refuse an instruction in its charge is reviewed for an abuse of discretion. *Dew v. Crown Derrick Erectors, Inc*., 208 S.W.3d 448, 456 (Tex. 2006). "If an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." *Louisiana-Pacific Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998); *see also* TEX. R. CIV. P. 277. Any error regarding a requested instruction is not reversible error unless it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Louisiana-Pacific Corp.*, 976 S.W.2d at 676; *see also* TEX. R. APP. P. 44.1(a).

### 2. Inferential Rebuttal

Sudden emergency is an inferential rebuttal defense, not an affirmative defense that must be pleaded. *See Dillard v. Tex. Elec. Co-Op*., 157 S.W.3d 429, 433–34 (Tex. 2005). An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts. *Id*. at 430. The purpose of a sudden emergency instruction is to advise the jurors

that if the evidence shows that conditions beyond the party's control caused the accident in question, or that the conduct of some person not a party to the litigation caused it, the jury need not blame a party. *Id.* at 432; *see also DeLeon v. Pickens*, 933 S.W.2d 286, 293 (Tex. App.—Corpus Christi 1996, writ denied) ("[T]he only purpose of the sudden emergency defense doctrine is to relieve a party from the consequences of his conduct that might otherwise be considered negligent.").

*3.  Requirements for Submission of Sudden Emergency Instruction*

To warrant the submission of an instruction on sudden emergency, there must be evidence that:

(1)  an emergency situation arose suddenly and unexpectedly,
(2)  the emergency situation was not caused by the defendant's negligence, and
(3)  after the emergency situation arose, the defendant acted as a person of ordinary prudence would have acted.

*Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex. 1995); *Jordan v. Sava, Inc*., 222 S.W.3d 840, 848 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  The evidence, even if conflicting, need only raise a fact issue regarding each of the elements of sudden emergency.  *Jordan*, 222 S.W.3d at 848; *DeLeon*, 933 S.W.2d at 294 ("The inclusion of an instruction on [sudden] emergency does not constitute error, . . . when the evidence conflicts as to whether the defendant's actions prior to the 'emergency' . . . were suspect.").  In fact, if there is *any support* in the evidence for a sudden emergency instruction, the instruction is properly given.  *Id*.; *Louisiana-Pacific Corp.*, 976 S.W.2d at 676.

Lynch asserts that the sudden emergency doctrine is not available to a driver whose own negligence or wrongful conduct has created the emergency under consideration.  *See Higginbotham v. Ritchie*, 367 S.W.2d 210, 212 (Tex. Civ. App.—Fort Worth 1963, no writ).  While the law provides that a motorist driving behind another vehicle "must drive at a reasonable

speed, keep back a reasonable distance, and keep his vehicle under reasonable control to provide for the contingency that a vehicle in front [may suddenly stop]," the mere occurrence of a rear-end collision does not establish negligence as a matter of law. *DeLeon*, 933 S.W.2d at 289. Rather, whether a rear-end collision raises an issue of negligence or establishes negligence as a matter of law depends on all the facts and circumstances of the case. *Id*.

*4. Analysis*

In the present case, Lynch complains that the sudden emergency doctrine is inapplicable here because Benham's negligence helped create the emergency.

> The sudden emergency doctrine is applicable in cases involving rear-end collisions when the defendant's negligent actions are a *result* of emergency conditions, but not when the defendant's actions *prior* to the emergency are negligent. In short, the evidence must be such that the jury could find that the collision was not proximately caused by the defendant's own pre-emergency negligence.

*Jordan*, 222 S.W.3d at 849–50 (internal citations omitted). Lynch testified that Benham told him that "he and his buddies" had just worked on the brakes and must not have bled them adequately. According to Benham's testimony, the cap on the master cylinder "popped off" and, when replaced, the brakes malfunctioned.

To determine whether a sudden emergency instruction was proper in this case, this court must determine whether the evidence raised a fact issue as to each of the elements of sudden emergency. *Id*. Here, it was undisputed that Benham's brakes had some maintenance performed prior to the accident. At trial, both Lynch and Benham testified that Benham immediately reported that his brakes failed thereby causing the accident. There was conflicting evidence on Benham's role in the brake failure.

Based on a review of the record, Benham's testimony, as well as the other evidence introduced at trial, raised an issue of fact on sudden emergency. *See DeLeon*, 933 S.W.2d at

294; *see also Carter v. Helicopter Ambulance Serv. of N. Tex., Inc.*, No. 05-95-00468-CV, 1996 WL 403987, at *5 (Tex. App.—Dallas July 19, 1996, writ denied). Consequently, the trial court abused its discretion by failing to submit the sudden emergency instruction. *See DeLeon*, 933 S.W.2d at 288, 294.

A court of appeals may reverse a trial court's judgment only if the court of appeals holds that the complained of error was harmful. TEX. R. APP. P. 41(a). When a jury instruction is requested and erroneously refused, the error is harmful if the instruction was reasonably necessary to enable the jury to render a proper verdict. *Louisiana-Pacific Corp.*, 976 S.W.2d at 676. If the jury would have found that a sudden emergency resulted in Benham rear-ending Lynch, Benham would not be liable to Lynch for negligence. *See Dillard*, 157 S.W.3d at 434. Thus, because Benham's evidence raised a fact issue as to the existence of a sudden emergency, the jury's consideration of the factual dispute was reasonably necessary to enable the rendition of a proper verdict. *See Louisiana-Pacific Corp.*, 976 S.W.2d at 676; *see also Chem. Exp. Carriers, Inc. v. Pina*, 819 S.W.2d 585, 589 (Tex. App.—El Paso 1991, writ denied) (failure to instruct the jury as to sole proximate cause was harmful because it would have defeated the defendant's liability). Accordingly, we remand this case to the trial court for further proceedings consistent with this opinion.[7]

## CONCLUSION

Although both experts opined that the second accident caused Lynch's need for surgery, under cross examination, both experts also conceded it was likely a combination of the two accidents resulting in Lynch's injuries. Additionally, Lynch's own testimony, which indicated that he missed almost six weeks of work after the first accident, and only four days of work after

---

[7] Because the sudden emergency instruction is dispositive of this appeal, we need not address Appellant's remaining factual sufficiency issue. *See* TEX. R. APP. P. 47.1 (encouraging concise opinions addressing only those issues "necessary to final disposition of the appeal").

the second, supports the severity of the injury from the first accident. As such, there is more than a scintilla of evidence to support the jury's verdict and the evidence is, therefore, legally sufficient. However, because the evidence raises a fact issue with regard to the defense of sudden emergency, the trial court erred in refusing Benham's requested instruction in the jury charge. Accordingly, we reverse the trial court's judgment solely with regard to Appellant Thomas Benham[8] and remand this matter for a new trial consistent with this opinion.

Rebecca Simmons, Justice

---

[8] Although Lynch argues that this court should remand for a new trial on all claims, we disagree. An appellate court "is not authorized to reverse a trial court's judgment in the absence of a properly assigned error." *Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983). Although Lynch complains of the effect that not reversing the judgment as to Kenworthy could have on remand, Benham has the option on remand of designating Kenworthy as a responsible third party so that the jury can apportion responsibility between the defendant and non-parties. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (West 2008); *see also Builders Transport, Inc. v. Grice-Smith*, 167 S.W.3d 18 (Tex. App.—Waco 2005, pet. denied).